IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISON

| | |
|---|---|
| JOSE ACEVEDO, individually, and as Special Administrator of the Estate of JOEL ACEVEDO;<br><br>Plaintiff,<br><br>OFFICER MICHAEL MATTIOLI, individually, and in his former capacity as an officer of the City of Milwaukee Police Department, OFFICER ROBERT ROACH, individually and in his capacity as an officer of the City of Milwaukee Police Department, and ALFONSO MORALES, in his Official Capacity as former Chief of Police for the City of Milwaukee Police Department<br><br>Defendants. | **CASE NO. 23-cv-00489**<br><br>**ORIGINAL COMPLAINT**<br><br><u>**JURY TRIAL DEMAND**</u> |

## **COMPLAINT AT LAW**

NOW COMES JOSE ACEVEDO, individually, and as special administrator of the Estate of Joel Acevedo, by and through his attorneys, and complaining against Defendants, Former Officer MICHAEL A. MATTIOLI, individually, Officer ROBERT ROACH, individually, Former Chief of Police, Alfonso Morales, in their capacity as officers of the Milwaukee Police Department, state and allege as follows:

### **INTRODUCTION**

1. This case arises from the wrongful death of JOEL ACEVEDO ("JOEL") in the hands of off-duty officer MICHAEL MATTIOLI ("MATTIOLI"). At 7:28 a.m. on Sunday, April 19, 2020, the Milwaukee County 911 dispatch received a call requesting police assistance at the residence of Milwaukee Police Department Officer MICHAEL MATTIOLI. MATTIOLI had thrown a party the night before the incident, despite of a stay-at-home order wherein guests,

1                    **COMPLAINT**

Case 2:23-cv-00489-BHL   Filed 04/14/23   Page 1 of 15   Document 1

including JOEL, engaged in a drinking spree. MATTIOLI woke up on Sunday morning and allegedly found his friend and guest, JOEL, going through his pockets. An altercation ensued whereby MATTIOLI got on top of Joel, put him in a rear-naked choke hold, and called 911 requesting backup.

2. Plaintiff, JOSE ACEVEDO, brings this action for money damages pursuant to 42 U.S.C. § 1983 to seek redress for deprivation of his son's civil rights by the defendants who were acting under color of state law. Defendant MICHAEL MATTIOLI, ("MATTIOLI"), in his former capacity as a duly-certified law enforcement officer formerly employed by the Milwaukee Police Department, violated JOEL'S right to be free from the use of excessive force; Defendant CITY OF MILWAUKEE ("Milwaukee" or "the City"), ROBERT ROACH, duly-certified law enforcement officer currently employed by the Milwaukee Police Department for failing to intervene and ALFONSO MORALES, in his official capacity as the Former Chief of the MILWAUKEE POLICE DEPARTMENT, whom carried out unconstitutional policies, customs, and/or practices under *Monell* and its progeny which ultimately led to JOEL's wrongful death on April 25, 2020.

3. Plaintiff has suffered untold physical, mental, and emotional harm as a result of the Defendants' actions and seek compensatory damages, punitive damages, penalties, costs, and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Wisconsin. Moreover, upon information and belief, all of the Defendants reside in the Eastern Judicial District.

## PARTIES

6. JOSE ACEVEDO, individually and as special administrator of the Estate of JOEL ACEVEDO, is a natural person who is a citizen and resident of the City of Milwaukee, County of Milwaukee, State of Wisconsin.

7. The City of Milwaukee ("Milwaukee") is an incorporated municipality and public entity responsible for the safety and welfare of its residents and/or visitors.

8. The Milwaukee Police Department ("MPD") is and was at all times relevant to this claim, an agency that fulfills the City's policing functions and of which vetted the authority to examine and to provide training to its police officers.

9. Defendant MATTIOLI is and was at all times relevant to this claim, a resident of the City of Milwaukee, County of Milwaukee, State of Wisconsin, and was employed and sworn as a police officer by MPD.

10. Defendant MATTIOLI, at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Milwaukee Police Department.

11. Defendant, Chief of Police ALFONSO MORALES ("MORALES"), was at all times relevant to this claim, a resident of the City of Milwaukee, County of Milwaukee, State of Wisconsin, and was the Chief of Police for the City of Milwaukee Police Department. In such capacity, MORALES was the chief policy maker in the City of Milwaukee Police Department and was the commanding officer for Defendant MATTIOLI and ROACH.

12. The City of Milwaukee is a municipality organized pursuant to Chapter 59 of the Wisconsin Statutes, with an office located at 200 E. Wells Street, Room 205, Milwaukee, WI 53202.

13. Defendant Officer Robert Roach ("ROACH"), is and was at all times relevant to this claim, a resident of the City of Milwaukee, County of Milwaukee, State of Wisconsin, and was employed and sworn as a police officer by the Milwaukee Police Department.

14. Defendant ROACH, at all times relevant to this claim, was acting under color of state law, as a police officer for the City of Milwaukee Police Department.

15. The City of Milwaukee has a legal obligation under Wis. Stat. § 895.46 to satisfy any judgment entered against MATTIOLI , ROACH, or MORALES if it is determined that either was acting under color of state law and within the scope of their employment at the time of the incident.

16. Plaintiff sues each and all defendants in both their individual and official capacities.

## CONSTITUTIONALLY PROTECTED INTERESTS

17. As a citizen of the United States, JOEL ACEVEDO ("JOEL") was protected against the use of excessive and deadly force without cause or justification as guaranteed by the Fourth Amendment and against conduct by state actors done with malice, reckless disregard, or deliberate indifference to his rights under the Fourteenth Amendment.

18. The conduct of the individual defendants as hereinafter described was done with malice or reckless disregard or with deliberate indifference to the rights of JOEL in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

19. JOEL endured almost (5) five days of pain and suffering due to the fatal injuries that ultimately led to his death as a result of the defendants' actions. The defendants' actions were the proximate cause of JOEL's personal injury, pain and suffering, and wrongful death.

4     COMPLAINT

## STATEMENT OF RELEVANT FACTS

20. At 7:29 in the morning of Sunday, April 19, 2020, Milwaukee County 911 dispatch received a call requesting police assistance at 4502 W. Cleveland Ave. in Milwaukee, WI.

21. Defendant MATTIOLI made the 911 call and identified himself as a police officer who needed assistance at his house.

22. The length of the 911 call was 3 minutes and 35 seconds.

23. The voice of JOEL was perceptible in the background of the 911 call. Throughout the duration of the call, Joel's distressed breathing and gasping can be heard.

24. JOEL can be heard pleading with Mattioli and the other guests to "let me go home...."

25. In response to the 911 call, ROACH and fellow Milwaukee Police Officer, Mark Sheremeta, were dispatched at approximately 7:34 a.m.

26. ROACH and Sheremeta were the first responding officers to arrive at the scene at 7:38 a.m.

27. When ROACH and Sheremeta arrived, there was a male, who was standing outside the above-described house of MATTIOLI. That said male told Officer Roach and Shermeta that a guy was being subdued in the kitchen.

28. Approximately 58 seconds had elapsed between the time ROACH and Sheremeta arrived in front of Mattioli's home and the time they opened the screen door of MATTIOLI's house.

29. Upon the arrival of ROACH and Sheremeta, there were no noticeable sounds or noise that was indicative of a struggle that could be heard coming from inside the house.

30. Another male, subsequently identified as AJ, was restraining JOEL's legs.

5                                           COMPLAINT

31. Officer ROACH, after observing a man strangling and using a rear-naked chokehold against another man, inquired as to, "Who is the officer?" MATTIOLI replied "I am."

32. JOEL was not moving, his eyes were closed shut, and there were no signs of a struggle with MATTIOLI.

33. ROACH described in an interview with Investigator Blomme that "it appeared that MATTIOLI had JOEL in a rear-naked choke hold. MATTIOLI had his left arm parallel to the left side of JOEL'S neck and head while his left hand was holding JOEL's head. MATTIOLI's right arm was underneath wrapping JOEL's neck. MATTIOLI had his body weight on JOEL's upper body and it appeared that MATTIOLI may have been compressing JOEL's neck."

34. ROACH later asked MATTIOLI if JOEL was breathing, and MATTIOLI responded, "I don't know."

35. ROACH then stated to MATTIOLI "I'm making sure you don't have your arm around his neck." MATTIOLI responded, "Oh yeah."

36. MATTIOLI then pulled his right arm out from underneath the neck area of JOEL thereby releasing JOEL.

37. JOEL's head rolled to the side with his eyes closed, and his body showed no signs of any movement.

38. It took ROACH approximately 22 seconds from the time ROACH entered the residence and observed the use of MATTIOLI's rear-naked choke hold, to the time he commanded MATTIOLI to get up and disengage from the continued force upon JOEL.

39. In total, JOEL was in a rear-naked chokehold for approximately 11 minutes and 20 seconds.

6

COMPLAINT

Case 2:23-cv-00489-BHL   Filed 04/14/23   Page 6 of 15   Document 1

40. ROACH checked JOEL for vitals and found that he was not breathing and was not showing any signs of a pulse. ROACH then requested for medical emergency services to respond.

41. ROACH and Sheremeta rolled JOEL onto his back and observed "bubbles" foaming around JOEL'S mouth.

42. Officer Sheremeta then began chest compressions.

43. ROACH directed one of the arriving officers, Officer Bouzek, to take MATTIOLI to his squad.

44. JOEL was taken to St. Luke's Hospital where he was listed in critical condition. JOEL was unresponsive to outside stimuli and was subsequently put on a ventilator.

45. While in the car, MATTIOLI admitted that he held Joel on the ground in his kitchen for quite a while before the police showed up.

46. MATTIOLI further stated, "I know it's ridiculous, I'm sorry."

47. MATTIOLI also said "I know what's deadly force and what's not, but I held him there to make sure he didn't get away … until the … you guys showed up … look, I wasn't holding him to make his air cut off you know, I'm not stupid."

48. While MATTIOLI spoke to Investigator Dalland, the following exchanges occurred:

> Mattioli: "Is this fucker dead?"
> Dalland: "No."
> Mattioli: "What the fuck is this all about?"
> Dalland: "Listen, he's not in good shape."
> Mattioli: "Well fuck him. He stole from me. I don't give a fuck what shape he is in."

49. JOEL later died on April 25, 2020.

50. JOEL's body was subsequently taken to the office of the Milwaukee County Medical Examiner, and on April 28, 2020, Dr. Brian Peterson, Chief Medical Examiner, performed an autopsy on the body of JOEL.

51. As a result of the autopsy, the Chief Medical Examiner concluded that the cause of death was "Anoxic Encephalopathy due to Traumatic Asphyxia" and ruled the death a homicide.

52. On May 13, 2020, a criminal complaint was filed against MICHAEL MATTIOLI for First Degree Reckless Homicide.

**MATTIOLI ACTED UNDER THE COLOR OF LAW**

53. While MATTIOLI was considered to be "off duty," it was clear that he was acting under the color of law. In *United States v. Christian*, 342 F.3d 744 (7th Cir. 2003), the court held that an officer may be acting under color of law even when off duty. The court found that determining whether an officer acted under color of law turns on the nature of his acts rather than his assigned duties. *Id*.

54. An officer can be acting under color of law even when acting out of personal emotion such as jealousy or anger if "an air of official authority pervaded the incident". *Id*.

55. The critical consideration is the "nature of the specific acts performed." *Latuszkin v. City of Chicago*, 250 F.3d 505-506 (7th Cir. 2001), *Pickrel v. City of Springfield*, Ill., 45 F. 3d 1115.

56. Courts have liberally construed that an officer has acted under color of law when he purports to exercise an official authority. *Barna v. City of Perth Amboy*, 42 F.3d 809, 815 (3rd Cir. 1994). This manifestation of authority may include "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others

8                                                                                                                              COMPLAINT

Case 2:23-cv-00489-BHL   Filed 04/14/23   Page 8 of 15   Document 1

pursuant to a duty imposed by police department regulations." *Barna,* 42 F.3d at 16; *see also Pickard v. City of Girard,* 70 F. Supp. 2d 802, 806 (N.D. Ohio 1999) (finding two circumstances when an off-duty police officer's actions are state action: "(1) when the officer undertakes purely private action while invoking his authority as a police officer, or as a result of his role as a police officer; and (2) when an off-duty police officer undertakes an official duty").

57. When MATTIOLI identified himself as a police officer, stating "I am a police officer and I need help", his statement drew a reasonable inference to the dispatcher to send backup for MATTIOLI.

58. When backup arrived, the first words that came out of the mouth of arriving Officer ROACH, when seeing MATTIOLI strangling JOEL in a rear naked chokehold was, "Who is the officer?" MATTIOLI replied "I am." Again, demonstrating an exercise of authority.

59. Because of the authority that MATTIOLI purported to exercise in his official capacity, ROACH *deferred* to MATTIOLI while MATTIOLI was restraining JOEL. ROACH waited for 22 seconds while MATTIOLI continued to restrain JOEL before ultimately instructing MATTIOLI to get up to begin performing CPR.

60. Even after being commanded to get up by ROACH, MATTIOLI further acted under the color of law, by attempting to perform an arrest by placing JOEL's arms behind his back to be placed into handcuffs. MATTIOLI then commanded ROACH to "arrest him."

61. Although not in full uniform, MATTIOLI was dressed in Milwaukee Police Department apparel that further demonstrated another exercise of authority. MATTIOLI was wearing a black Officer Matthew Rittner Memorial shirt with MPD badge insignia over the left chest, and a Tactical Enforcement design on the back.

62. MATTIOLI considered his actions to be under color of state law during an interview when he stated, "I'm a police officer" and points to his T-shirt with MPD police badge design on his breast. MATTIOLI further stated, "This is how I get treated when a motherfucker steals from me and 'I arrest him,' call 911, now I'm being detained and sent to the hospital four hours later."

63. MATTIOLI stated "Fuck you motherfuckers, I made an arrest. I called 911. I was stolen from, my friend got punched in the fucking face, you saw his eye….yea write it down."

64. MATTIOLI further stated that he was not trying to "hurt the guy or kill the guy…He was trying to 'arrest' the guy."

65. Another guest of MATTIOLI said that he could see MATTIOLI struggling with JOEL, and knowing that MATTIOLI is a cop, he believed he needed to assist MATTIOLI.

66. The foregoing incidents clearly demonstrate, and cannot hold otherwise, the fact that MATTIOLI was operating under color of state law, and therefore, the City of Milwaukee is liable for MATTIOLI's actions.

## COUNT I – 42 U.S.C. § 1983

### UNCONSTITUTIONAL POLICY AND CUSTOM

67. Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

68. Prior to April 19, 2020, the Milwaukee Police Department, through its official policy maker, MORALES, adopted de facto policies or customs of utilizing excessive force and/or violating a person's equal protection rights in the excessive use of physical force, including but not limited to, the use of choking, neck restraints, and the unconstitutional use of deadly force on citizens.

69. These de facto policies or customs of utilizing excessive force and/or violating a person's equal protection rights permitted, encouraged, tolerated, and/or ratified the aforesaid unlawful actions of Defendant MATTIOLI, and were enacted and/or adopted with malicious and reckless disregard and deliberate indifference to JOEL ACEVEDO's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and clearly established law.

70. These aforesaid unconstitutional policies or customs were a result of the failure of the City of Milwaukee and The Milwaukee Police Department to adequately train, supervise, and/or discipline its police officers including the named defendant officers.

71. The conduct of defendants MORALES and the City of Milwaukee was a cause of JOEL ACEVEDO's personal injuries, pain and suffering, and wrongful death.

## COUNT II – 42 U.S.C. § 1983

## DELIBERATE INDIFFERENCE

72. Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

73. The Milwaukee Police Department through its official policy maker MORALES failed to maintain policies that specifically forbid choke holds.

74. The Milwaukee Police Department was aware of the need for specific policies forbidding this behavior.

75. This failure created an unreasonable risk on those with constitutionally protected rights by the Milwaukee police officers who may use these policies to maneuver for their own advantage.

76. The Milwaukee Police Department through its official policy maker MORALES was deliberately indifferent to this risk and failed to seek the termination of such risks until May

6, 2021, a little over a year after this incident; whereby the Milwaukee Fire and Police Commission unanimously passed a complete ban on the use of chokeholds by the MPD and neck restraints with no exception.

## COUNT III – 42 U.S.C. § 1983

### UNLAWFUL USE OF FORCE BY CHOKING JOEL ACEVEDO

77. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

78. The MPD Policy and Standard Operating Procedure, ("Procedures") in effect and at all times relevant to this claim provides, "It is the policy of the Milwaukee Police Department that members hold the highest regard for the sanctity of human life, dignity, and liberty of all persons. It is the policy of the department to accomplish the department's mission with the cooperation of the public and with minimal reliance upon the use of physical force. Members shall only use the force necessary to perform their duties and in accordance with department policy." (Procedures, SOP-460.05).

79. MPD Procedures also state "The use of force by a police member must be objectively reasonable. Police members shall use only the force necessary to effectively maintain control of a situation and protect the safety of police members and the public." (Procedures, SOP 460-15).

80. The MPD Procedures - Amount of Force Policy, 460.20 (WILEAG 5.1.2, 5.1.3) state in pertinent part, "Force that is intended or likely to cause great bodily harm or death, may only be used as a last resort: (1) If reasonable under all the circumstances then existing to prevent great bodily harm or death to the officer or a third party; and (2) When necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect presently poses a significant threat of great bodily harm or death to the officer or others.

12    COMPLAINT

81. JOEL attempted to comply with MATTIOLI's alleged order to leave the premises by continually pleading "let me go home." JOEL posed no significant threat of great bodily harm or death to MATTIOLI or others, as JOEL was defenseless.

82. MATTIOLI knew, at all times relevant to this claim, the level and amount of force that would violate the "objectively reasonable" standard and further knew that he would be subjected to civil liability if he violated this standard.

83. MATTIOLI maintained JOEL in a rear-choke hold for approximately 11 minutes and 20 seconds.

84. MATTIOLI's conduct in placing and keeping JOEL in an 11-minute choke hold violated the MPD Policy and Procedure Manual definition of objectively reasonable use of force and was intended or likely to cause great bodily harm or death which violated JOEL ACEVEDO's clearly established constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, and clearly established law.

85. MATTIOLI's aforesaid conduct in placing and keeping JOEL in an 11-minute chokehold unreasonably created a physically threatening situation, and was a cause of JOEL's personal injuries, pain and suffering, emotional distress, and wrongful death.

86. On May 6, 2021, on the heels of public outrage for incidents such as this one, the Milwaukee Fire and Police Commission voted unanimously to completely ban the use of chokeholds and neck restraints with no exceptions.

### COUNT IV – 42 U.S.C. § 1983

### FAILURE TO ACT – DUTY TO INTERVENE

87. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

88. The MPD Standard Operating Procedures, Duty to Intervene, SOP 460.25 states

> "Any officer who personally observes another officer using force, which the observing officer believes to be beyond that which is objectively reasonable under the circumstances, shall reasonably attempt to intervene to prevent the use of such excessive force, if the observing officer is in a position to do so, and if any such intervention does not jeopardize safety. Any such intervening officer shall promptly report their observations, along with his/her own intervening actions to a supervisor. A failure to intervene in any unreasonable use of force, when there is an opportunity to do so, demonstrates a lack of courage, and a violation of the Code of Conduct."

89. Upon discovering JOEL being choked by MATTIOLI, OFFICER ROACH failed to intervene and allowed approximately 22 seconds to lapse before instructing MATTIOLI to release JOEL's body from the chokehold.

90. ROACH's failure of his duty to intervene resulted in and/or contributed to the injuries sustained and to the wrongful death of JOEL ACEVEDO.

## COUNT V – 42 U.S.C. § 1983

### PUNITIVE DAMAGES

91. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

92. The unlawful conduct of each and every defendant as described in the aforementioned paragraphs was deliberately undertaken and was unlawfully committed in wanton, willful, knowing, and reckless disregard of JOEL ACEVEDO's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

93. Plaintiffs are therefore entitled to punitive damages against all named defendants.

WHEREFORE, the Plaintiff, JOSE ACEVEDO, individually, as special administrator of the Estate of JOEL ACEVEDO demands judgment against the defendants, as follows:

1. For compensatory damages for all pecuniary and non-pecuniary losses in an amount in excess of $15,000,000 to be determined by a jury;

2. For punitive damages in an amount to be determined by a jury;

3. For reasonable attorney fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

4. Such other and further relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

Dated April 14, 2023

By: /s/ B'Ivory LaMarr
B'Ivory LaMarr, Bar No. 1122469
THE LAMARR FIRM
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
Phone: (800) 679-4600 ext. 700
Email: blamarr@lamarrfirm.com

Kirk M. Claunch, Bar No. 1039975[1]
THE CLAUNCH LAW FIRM
301 W. Central Avenue
Forth Worth, TX 76164
Phone: (817)335-4003
Fax: (817) 335-7112
Email: claunchlaw3@earthlink.net

BEN CRUMP LAW
Ben Crump (Washington, D.C. Bar No. 1552623)
Precious Chavez
122 S. Calhoun Street
Tallahassee, FL 32301
800.959.1444
ben@bencrump.com
precious@bencrump.com

*Counsel for Plaintiff*

---

[1] To seek pro-hac admission