IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISON

| | |
|---|---|
| JOSE ACEVEDO, individually, and as Special Administrator of the Estate of JOEL ACEVEDO;<br><br>*Plaintiff,*<br><br>v.<br><br>MICHAEL MATTIOLI, et al.,<br><br>*Defendants.* | **CASE NO. 23-cv-00489**<br><br>**JURY TRIAL DEMANDED** |

**Plaintiff's Statement of Material and Undisputed Facts**

NOW COMES JOSE ACEVEDO, individually, and as special administrator of the ESTATE OF JOEL ACEVEDO, by and through his counsel, B'IVORY LAMARR, ESQUIRE, of the law firm of B'IVORY LAMARR TRIAL LAWYERS; DEVON M. JACOB, ESQUIRE, of the law firm of JACOB LITIGATION, INC.; and BENJAMIN L. CRUMP, ESQUIRE, of BEN CRUMP LAW, PLLC, to present the following statements of material and undisputed facts:

1

1. Mattioli admits that on the date of the incident he was employed by the Milwaukee Police Department, as a police officer, in good standing. *Mattioli Dep., Exhibit 1, at pp. 63:6 to 64:2.*

Mattioli Dep., at pp. 63:6 to 64:2
63

```
 6  Q.  Sorry.  Fair.  Yes, fair.
 7          Now, on the date in question -- and
 8      let's just put that on the record -- it was
 9      Sunday, April 19th, 2020; correct?
10  A.  Correct.  That was the morning.
11  Q.  Okay.
12  A.  Sunday morning.
13  Q.  So that's the morning when Joel Acevedo and
14      yourself and others had this incident that
15      results in police coming to your residence;
16      correct?
17  A.  Right.
18  Q.  And on that date, you were employed by the City
19      of Milwaukee Police Department as a police
20      officer; correct?
21  A.  I was.
22  Q.  And you were still in good standing as a police
23      officer; correct?
24  A.  I was.
25  Q.  Your certification wasn't suspended or anything
```
64

```
 1      like that; correct?
 2  A.  No, it was not.
```

2. At around 7:29 AM, Mattioli called 911 and stated, "I am a police officer and I need help" at 4502 W. Cleveland Avenue, Milwaukee, Wisconsin (Mattioli's home). *Mattioli Answer, Doc. 26, at ¶ 11.*

3. Mattioli admits that other police officers responded to his "request for backup." *Mattioli Answer, Doc. 26, at ¶ 14.*

4. Mattioli admits that he did not lie to criminal investigators or when he testified at his criminal trial, when he admitted that he used force against Joel Acevedo during the performance of an arrest. *Mattioli Dep., Exhibit 1, at pp. 87:4 to 87:9; 89:25 to 90:21.*

<u>Mattioli Dep., at pp. 87:4 to 87:9</u>
                    87
4  Q.  And you admitted during cross-examination at
5      your criminal trial you were attempting an
6      arrest.  You don't -- you didn't testify
7      falsely at your criminal trial; correct?
8  A.  No.  I believe I said that to the police
9      officers afterwards.

<u>Mattioli Dep., at pp. 89:25 to 90:21</u>
                    89
25 Q.  Right.  And you told the prosecutor you agreed
                    90
1      that it was in the performance of an arrest;
2      correct?
3  A.  I said, "In a way."  Yes, that's what I said.
4  Q.  Well, you didn't say no; correct?
5  A.  Right, I did not say no.
6  Q.  And after the incident when you were asked, you
7      explained you were arresting him for his
8      conduct; correct?
9  A.  I did say that, yes.
10 Q.  And you weren't obstructing justice and lying
11     to law enforcement when you were saying those
12     things after the incident; correct?
13 A.  No.
14         MS. BAYNARD:  Objection to form.
15         THE WITNESS:  Sorry.
16         MS. BAYNARD:  Go ahead.  He already
17     answered.
18 BY MR. JACOB:
19 Q.  You weren't obstructing justice, you were being
20     truthful at that time; correct?
21 A.  I was truthful through this entire process.

3

5. Mattioli admits that when he used force against Joel Acevedo, he was making an arrest for a possible violation of Wisconsin state and local law. *Mattioli Dep., Exhibit 1, at p. 124:10-16.*

<u>Mattioli Dep., at p. 124:10-16</u>
124
10  Q.  So you were making an arrest. Would it have
11      been for a federal crime?
12  A.  I don't think so, but --
13  Q.  Would it have been for a state crime?
14  A.  Possibly, yes.
15  Q.  Would it have been for a local ordinance?
16  A.  Possibly, yes.

6. Mattioli admits that when he was performing the arrest, "what was going through my head at the time was that Joel (Acevedo) had just tried to steal from me" . . . "was thinking of the crime of robbery with use of force, which is a felony." *Mattioli Dep., Exhibit 1, at pp. 81:8 to 81:23.*

<u>Mattioli Dep., at pp. 81:8 to 81:23</u>
81
 8  Q.  You would say so what?
 9  A.  If you want to talk about crimes, what was
10      going through my head at the time was that Joel
11      had just tried to steal from me. I don't know
12      if he did try to -- I don't know if he did
13      steal anything or if he just attempted to steal
14      anything. But he did that, and then he refused
15      to leave my house, and then he started
16      physically assaulting people. So in my head, I
17      was thinking of the crime of robbery with use
18      of force, which is a felony. Also, could be
19     interpreted of theft from person, which is a
20      felony, upstairs in my room.
21          He damaged property in my -- in my
22      house. There's different crimes that you could
23      say he committed and I think he committed.

7. Mattioli admits that in addition to acting on behalf of himself, he acted on behalf of another crime victim. *Mattioli Dep., Exhibit 1, at p. 80:16-20; see also Mattioli Answer to Cross-Claim, Doc. 35, at ¶ 150.*

<u>Mattioli Dep., at p. 80:16-20</u>
```
                           80
16  Q.  So this has now gone from somebody you want to
17      leave your house to now you witnessing, what, a
18      misdemeanor assault in your presence.  Is that
19      fair?
20  A.  He assaulted me and Christopher, yes.
```

8. Mattioli admits that when he is making an arrest, he is doing so on behalf of the Milwaukee Police Department. *Mattioli Dep., Exhibit 1, at pp. 124:10 to 125:5.*

<u>Mattioli Dep., at pp. 124:10 to 125:5</u>
```
                          124
17  Q.  Okay.  And when you are functioning as a police
18      officer, performing your law enforcement duties
19      as a police officer, are you doing it on behalf
20      of, let's say, your neighbor said, hey, you are
21      going to be a police officer today, or are you
22      doing it on behalf of a police department that
23      says, hey, we are going to swear you in as a
24      police officer, we are going to ask you to
25      perform as a police officer on our behalf?
                          125
 1  A.  The second part, on behalf of the police
 2      department whatever.
 3  Q.  And which police department was that?
 4  A.  Well, the only police department I've ever
 5      worked for was Milwaukee.
```

9. Mattioli admits that when he is making an arrest, he is acting pursuant to the policies of the Milwaukee Police Department. *Mattioli Dep., Exhibit 1, at p. 125:6-11.*

Mattioli Dep., at p. 125:6-11<br>125

```
 6  Q.  Okay.  And were you acting pursuant to -- or
 7      when you are a police officer, are you acting
 8      pursuant to your neighbor's book of rules, or
 9      does your police department give you a set of
10      policies that you are acting pursuant to?
11  A.  The police department.
```

10. Milwaukee Police Department Standard Operating Procedure (SOP) 220 – Arrest Authority – governs the authority the City of Milwaukee provides to its police officers to perform arrests. *See SOP 220, Exhibit 2.*

11. SOP 220.10 – Definitions – defines "Personally Involved" as used in the policy as follows:

> A situation where the off-duty member, a family member, or friend becomes engaged in a dispute or incident involving a personal matter with the person to be arrested or any other person connected with the incident. *This does not apply to situations where the off-duty member is a victim of a crime.* (Emphasis Added).

12. SOP 220.15 – On Duty Arrests and Procedure – provides in relevant part, the following:

> A. PROCEDURES FOR ARRESTS
>
> 1. In order for an arrest to occur, an officer must have the intent to take a person into custody and the person should have an understanding that he/she is arrested and is in custody. When making an arrest, an officer shall:
>     a. Identify him/herself as a police officer. (If it is apparent by the wearing of a uniform or other means that the person making the arrest is a police officer, no further identification is necessary.)

6

b. Restrict the arrested subject's movement using only the amount of reasonable force necessary to overcome their resistance.

c. When an arrested person is taken into physical custody, the arresting officer shall be responsible for completing the required reports. (WILEAG 1.7.4.4)

Note: Although officers may inform the subject that they are under arrest no formal declaration of arrest is required.
*****
3. Arrests without a warrant

a. An officer may make an arrest without a warrant if the officer has probable cause to believe a person is committing or has committed a crime.
*****
B. Members may conduct official investigations and make arrests within Milwaukee County.

1. Members may arrest a subject whom the member has observed committing a crime.

  13. SOP 220.30 – Off Duty Arrests and Aid – provides in relevant part, the following:

A. ARREST AUTHORITY

An off-duty member may arrest or provide aid or assistance anywhere within the state of Wisconsin if:

1. The member is responding to an emergency situation that poses a significant threat to life or bodily harm.

2. The member is taking action that the member would be authorized to take under the same circumstances in Milwaukee County while on-duty.

7

14. SOP 220.30 – Off Duty Arrests and Aid – provides in relevant part, the following:

> B. ARREST LIMITATIONS
>
> 1. The member's actions must be objectively reasonable. All aspects of the situation, including the member's abilities, training, experience, availability of equipment, communications, as well as a tactical risk assessment, shall be taken into consideration prior to deciding to act. The opportunity and/or means to have on-duty officers safely respond prior to acting must be weighed. When practicable, the member should contact the law enforcement jurisdiction in lieu of, or prior to, intervening. In some instances, it may be more beneficial to be a good witness rather than attempt to physically intervene.
>
> 2. Members are discouraged from taking police action when the member has consumed alcohol or any other substance which could impair rational action or conduct.
>
> 3. The member shall not be personally involved in the incident underlying the arrest.
>
> 4. The member shall not be engaged in off-duty employment where the member's actions are in furtherance of the interests of the private employer.
>
> 5. If the member is unarmed, at minimum, the member shall possess a department issued identification card. If the member is armed with his or her duty weapon or other approved handgun, the member must possess both badge and identification card. The member shall display these identifiers as soon as practicable.
>
> 6. The member shall abide by federal and state laws, as well as department standard operating procedures.

15. SOP 220.30 – Off Duty Arrests and Aid – provides in relevant part, the following:

> C. RESPONSE TO ON-DUTY PERSONNEL
>
> 1. On-duty personnel have primary authority at any scene.
>
> 2. The off-duty member shall immediately identify him or herself as an off-duty officer and comply with all the commands of the on-duty personnel.
>
>> Note: There have been a number of documented incidents of off-duty officers killed by on-duty officers who were unaware the individual was an off-duty officer.
>
> 3. The member shall be cooperative, provide all requested information to on duty personnel and remain on scene until released by on-duty personnel.

**Respectfully Submitted,**

**By:** /s/ B'Ivory LaMarr            **Date: August 1, 2025**
**B'IVORY LAMARR, ESQUIRE**
Wisconsin Bar No. 1122469
blamarr@lamarrfirm.com
THE LAMARR FIRM
5718 Westheimer Road, Suite 1000, Houston, TX 77057
800.679.4600, Ext. 700

**By:** /s/ Devon M. Jacob            **Date: August 1, 2025**
**DEVON M. JACOB, ESQUIRE**
Pennsylvania Bar No. 89182
North Carolina Bar No. 63663
djacob@jacoblitigation.com
JACOB LITIGATION, INC.
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733

**KIRK M. CLAUNCH, ESQUIRE**
Texas Bar No. 1039975
claunchlaw3@earthlink.net
THE CLAUNCH LAW FIRM
301 W. Central Avenue, Forth Worth, TX 76164
817.335.4003


**BENJAMIN L. CRUMP, ESQUIRE**
Washington, D.C. Bar No. 1552623
court@bencrump.com
**PRECIOUS CHAVEZ, ESQUIRE**
precious@bencrump.com
BEN CRUMP LAW, PLLC
122 S. Calhoun Street, Tallahassee, FL 32301
800.959.1444

*Counsel for Plaintiff*