IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JOSE ACEVEDO, Individually, and as
Special Administrator of the
ESTATE OF JOEL ACEVEDO,

              Plaintiffs,

v.                                                      CASE NO. 23cv00489

MICHAEL MATTIOLI,
ROBERT ROACH,
ALFONSO MORALES, and
CITY OF MILWAUKEE,

              Defendants.
_____

**DEFENDANT MICHAEL MATTIOLI'S PROPOSED FINDINGS OF FACT
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**
_____

Defendant Michael Mattioli, by his attorneys, WIRTH + BAYNARD, submits the following Proposed Findings of Fact in support of his Motion for Summary Judgment.

**Parties and Background**

1. At the time of his death, Joel Acevedo (Acevedo) was an adult resident of the State of Wisconsin. (ECF 23 ¶ 4)

2. Plaintiff, Jose Acevedo, is the father of Joel Acevedo and serves as the Special Administrator for the Estate of Joel Acevedo. (ECF 23 ¶ 5)

3. Defendant Michael Mattioli (Mattioli) is an adult resident of the State of Wisconsin and was employed with the City of Milwaukee Police Department from 2006 until he resigned in September of 2020. (Baynard Decl. Exh. A – Deposition of Michael Mattioli (hereinafter Mattioli Dep.) 6-7, 27, 63, 138-139, 147; Declaration of Michael Mattioli (hereinafter Mattioli Decl.) at ¶ 1)

1

4. Defendant City of Milwaukee is a Wisconsin municipal corporation whose principal offices are located in Milwaukee, Wisconsin. (ECF 23 ¶ 9)

**Jurisdiction and Venue**

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction over the Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343. (ECF 23 ¶¶ 1-2)

6. The Eastern District of Wisconsin is the proper federal venue for this action under 28 U.S.C. § 1391(b) because it is where all acts alleged in the Amended Complaint occurred. (ECF 23 ¶ 3)

**The Events of April 18-19, 2020**

7. Mattioli met Acevedo at the Northwestern Mutual Building in 2019 while Mattioli was working as a uniformed Milwaukee police officer and while Acevedo was working as a security guard. (Mattioli Dep. at 65-66, 142)

8. On the evening of April 18, 2020, Mattioli hosted a bonfire at his home with three friends—Christopher Peters, Andrew Janowski, and Joel Acevedo. (Mattioli Dep. at 64; Baynard Decl. Exh. C, Excerpts of the Trial Transcript in *State of Wisconsin v. Michael A. Mattioli* of Andrew Janowski's testimony (hereinafter Janowski Trial Trans.) at 93)

9. The night was uneventful, and the group sat around a bonfire drinking until it got too cold and they moved the gathering inside to the kitchen table. (Mattioli Dep. at 64, 69-70, 154; Baynard Decl. Exh. D – Excerpts of the Trial Transcript in *State of Wisconsin v. Michael A. Mattioli* of Christopher Peters' testimony (hereinafter Peters Trial Trans.) at 13-16; *see also* Janowski Trial Trans. at 76:1-9)

2

10. Mattioli, Peters, Janowski, and Acevedo all four friends consumed alcohol. (Mattioli Dep. at 64)

11. Acevedo and Peters had also used cocaine, but Mattioli was unaware of the drug use as the two did so in secret. (Mattioli Dep. at 64, 69-70, 164-165; Peters Trial Trans. at 12-13; 33: 15-19; *see also* Janowski Trial Trans. at 74:22-24)

12. At some point in the night, Acevedo asked Peters if he wanted to go in on the purchase of cocaine. (Peters Trial Trans. at 62:14-64:11)

13. Because the group was drinking, Peters, Janowski, and Acevedo all stayed the night at Mattioli's house. (Mattioli Dep. at 71-72, 146)

14. Mattioli went to sleep in his room on the second floor, Janowski went to sleep on the couch in the living room on the main level, and Peters went to sleep in the basement. (Mattioli Dep. at 71; Janowski Trial Trans. at 77; Peters Trial Trans. at 17)

15. In the early morning hours of April 19, 2020, Mattioli awakened in his dark bedroom to Acevedo rummaging through his pants pockets. (Mattioli Dep. at 72)

16. Mattioli believed that Acevedo was trying to rob him. (Mattioli Dep. at 72-73)

17. Mattioli observed Acevedo standing over him, yelling and moving fast. Based on Acevedo's behavior, Mattioli believed that he had not slept. (Mattioli Dep. at 73-73)

18. Acevedo had turned into a completely different person, became super hostile and irate, which was confusing and concerning to Mattioli because a couple of hours earlier, they were all friends having a good time. (Mattioli Dep. at 75; Janowski Trial Trans. at 73:22-24)

19. Based on Acevedo's erratic behavior, Mattioli wanted him out of his house and repeatedly told Acevedo to leave his house as he followed him down the stairs into the living room. (Mattioli Dep. at 75-76; Janowski Trial Trans. at 80:22-24, 100; Peters Trial Trans. at 19)

20. Acevedo turned towards Mattioli in an aggressive manner and squared up like he was going to fight. (Mattioli Dep. at 76-77)

21. Mattioli perceived Acevedo to be a physical threat. (Mattioli Dep. at 78)

22. Acevedo was a large person, bigger and stockier than Mattioli, and stood at about 6'3" and 270 pounds. (Mattioli Dep. at 76-77; Peters Trial Trans. at 49:22-50:6)

23. The commotion caused Janowski and Peters to wake up. (Mattioli Dep. at 78-79; Peters Trial Trans. at 17:15-18:14; Janowski Trial Trans. at 77:22-78:22)

24. Acevedo refused to leave Mattioli's house. (Mattioli Dep. at 78, Peters Trial Trans. at 19:4-20:17, 42-43, Janowski Trial Trans. at 101:1-2)

25. Peters was scared and described Acevedo as enraged and aggressive. (Peters Trial Trans. at 21-25, 60:2-4)

26. Acevedo lunged at Mattioli and forcefully struck him in the chest and caused him to step back. (Mattioli Dep. at 78-79, 155; Peters Trial Trans. at 20:18-21:8)

27. Acevedo then punched Peters in the face so hard that Mattioli heard a crack and saw Peters go backward. (Mattioli Dep. at 79-80, 155; Peters Trial Trans. at 21:23-22:11, 50-51; Janowski Trial Trans. at 102-102)

28. Acevedo punched Peters in the nose and then again in his right eye. (Peters Trial Trans at 21:23-22:4, 28:19-29:6, 50-51)

29. Acevedo's assaults on Mattioli and Peters were unprovoked. (Mattioli Dep. at 79-80, 164; Peters Trial Trans. at 47:5-25, 52; Janowski Trial Trans. at 103:3-11)

30. Acevedo punched Peters with so much force that he lost his balance and knocked over a glass lamp as he fell to the ground. (Mattioli Dep. at 80)

31. The confrontation occurred in a very small area of Mattioli's living room and moved into the adjoining small kitchen. (Peters Trial Trans. at 62:1-13; Mattioli Dep. at 155)

32. Mattioli got on top of Acevedo and used his body weight to try and keep him on the ground because he knew that as soon as Acevedo got up, he was going to continue to throw punches, and Mattioli wanted to prevent that. (Mattioli Dep. at 80-81, 86)

33. By this point in the confrontation, Mattioli had witnessed Acevedo commit several misdemeanor and felony crimes, including physical assault, robbery with the use of force, theft from a person, and property damage. (Mattioli Dep. at 81:3-83:6)

34. Janowski became involved in the physical fight on the kitchen floor. (Jankowski Trial Trans. at 83)

35. Mattioli, Acevedo, and Jankowski wrestled around a little on the ground in the kitchen as Acevedo was standing up and Mattioli was trying to keep him on the ground. (Mattioli Dep. at 86; Peters Trial Trans. at 23:2-6, 53; Janowski Trial Trans. at 83)

36. At approximately 7:29 a.m., Mattioli called 911, identified himself as an officer, and requested assistance at his home at 4502 W. Cleveland Avenue in Milwaukee. (ECF 23 ¶ 11; Mattioli Dep. at 86)

37. Mattioli called 911 because he needed help and wanted the Milwaukee Police Department to arrest Acevedo. (Mattioli Dep. at 87)

38. Acevedo kept fighting and knocked the phone out of Mattioli's hand. Peters picked up the phone and told the dispatcher that Acevedo was attacking them and to please come as soon as possible. (Peters Trial Trans. at 24:18-25:5-12, 58:11-25)

39. Acevedo's behavior and continued resistance posed a danger to Mattioli and others in the house. (Mattioli Dep. at 78, 82-83, 101-102)

40. After wrestling for several minutes, Mattioli and Acevedo were on the ground in a position with Acevedo was on his stomach and Mattioli was on top of him with his knees anchored on the ground, essentially straddling Acevedo. (Mattioli Dep. at 95-96)

41. Janowski laid across Acevedo's legs because of Acevedo's size and because he did not want Acevedo to cause any further harm to anyone. (Mattioli Dep. at 92; Jankowski Trial Trans. at 83, 106; Peters Trial Trans. at 24:23-25:)

42. Mattioli's upper body was lying on top of Acevedo's upper body, and Mattioli's right arm was under Acevedo's chin/neck area. (Mattioli Dep. at 95-97, 99)

43. Acevedo was trying to push off the ground, and Mattioli was trying to push him back down. (Mattioli Dep. at 97; Peters Trial Trans. at 56:19-57:6; Janowski Trial Trans. at 85-86)

44. Mattioli and Janowski were trying to get Acevedo under control, and Acevedo was angry and flailing and yelling. (Peters Trial Trans. at 55:7-18; Janowski Trial Trans. at 86:4-8)

45. Mattioli did not put his entire body weight on Acevedo because he had weight on his elbow and arm, and his knees were on the ground. (Mattioli Dep. 107, 110-111)

46. At some point, Acevedo stopped struggling and started to calm down. Mattioli was exhausted, and it appeared to him that Acevedo was exhausted too. (Mattioli Dep. at 99, 104:24-105:9, 162)

47. Once Acevedo stopped struggling, Mattioli checked and saw Acevedo was breathing and thought everything was okay. Mattioli felt relief because he believed that Acevedo had stopped fighting and knew that police would be there any minute to help him. (Mattioli Dep. at 106-107)

48. Mattioli stayed on top of Acevedo with his knees and elbows on the ground, and Janowski stayed on the back of Acevedo's legs until the police arrived. (Mattioli Dep. at 88, 89, 94, 100, 121; Janowski Trial Trans. at 86:21-87)

49. At approximately 7:38 a.m., Milwaukee Police Officer Defendant Roach and his partner arrived and made contact with Peters in the front yard of Mattioli's residence. (ECF 23 ¶ 14; Baynard Decl. Exh. B – Deposition of Robert Roach (hereinafter Roach Dep.) at 25; Peters Trial Trans. at 26-27)

50. Mattioli still thought Acevedo was a threat and told the MPD officers multiple times to handcuff Acevedo. (Mattioli Dep. at 101; Baynard Decl. Exh. E – Excerpts of the Trial Transcript in *State of Wisconsin v. Michael A. Mattioli* of Robert Roach's testimony (hereinafter Roach Trial Trans.) at 19:19-22)

51. Mattioli and Janowski got off Acevedo and took a step back. At that time, Officer Roach checked Acevedo for a pulse and started CPR. (Roach Dep. at 83-84)

52. Mattioli was in disbelief and did not know that Acevedo had stopped breathing and did not observe Acevedo in any respiratory distress during the altercation. If he had, he would have changed the situation. (Mattioli Dep. at 98:9-12, 101-102, 104, 107)

53. Mattioli did not recall any statements Acevedo made while they were wrestling on the ground and did not recall Acevedo saying anything like "let me go home." (Mattioli Dep. at 159; Janowski Trial Trans. at 86:15-16)

54. Mattioli did not observe Acevedo to be suffering from any medical emergency during their altercation. (Mattioli Dep. at 91)

55. As a police officer making an arrest, Mattioli has held people on the ground until he could get them into handcuffs in front of other MPD officers and supervisors. No one has ever

7

told Mattioli that it was dangerous or excessive force to use his body weight to hold someone on the ground. No one has ever died. (Mattioli Dep. at 93-94, 154, 161)

**Additional Relevant Facts**

56. On April 18 and 19, 2020, Mattioli was employed as a Milwaukee Police Department Officer and in good standing but was off duty at all times during his interaction with Acevedo. (Mattioli Dep. at 63)

57. Acevedo's medical history demonstrates a compromised respiratory system, chronically asthmatic lungs, exacerbated by an immunoglobulin deficiency, severe pulmonary insufficiency, and obesity. (Baynard Decl. Exh. F – Excerpts of the Trial Transcript in *State of Wisconsin v. Michael A. Mattioli,* including Dr. Jeffrey Jentzen's testimony (hereinafter Jentzen's Trial Trans.) at 59, 86, 92)

58. Acevedo smoked cigarettes. (Peters Trial Trans at 33)

59. At the time of the incident, Mattioli was unaware of Acevedo's health history with his lungs and asthma. (Mattioli Dep. at 97, 162)

60. Acevedo had a post-mortem urine sample collected on April 19, 2020, at approximately 11:32 am, which tested positive for cocaine and ethanol. (Baynard Decl. Exh. F – Excerpts of the Trial Transcript in *State of Wisconsin v. Michael A. Mattioli,* including Dr. Jimmie Valentine's testimony (hereinafter Valentine's Trial Trans.) at 4, 9, 12:24-13:18)

61. Acevedo's BAC at 11:32 am (approximately 3 hours after the incident) was estimated at .2. (Valentine Trial Trans at 13)

62. As a result of Acevedo's death, Mattioli was charged with first-degree reckless homicide. The matter proceeded to trial in November of 2023 and resulted in a not guilty verdict in favor of Mattioli.[1] (Mattioli Dep. at 134)

63. The Estate failed to serve a written Notice of Circumstances upon Mattioli and his employer within 120 days of the event. (ECF 32 at 33 ¶¶3-4; Mattioli Decl. ¶ 2)

64. Mattioli did not intend to hurt or kill Acevedo. (Mattioli Dep. at 85, 166)

65. Mattioli did punch, push, kick, or strike Acevedo. (Mattioli Dep. at 79, 163; Peters Trial Trans. at 54:12-20; Janowski Trial Trans. at 102:1-5)

66. Mattioli had access to his firearm but did not use it against Acevedo during the altercation. (Mattioli Dep. at 83, 163)

67. Mattioli acted in self-defense, and his only intent was to restrain Acevedo until help came to prevent further injury to himself and others. (Mattioli Dep. at 166)

68. Acevedo was the aggressor in the confrontation. (Janowski Trial Trans. at 108:17-24)

69. Roach entered the home and observed Mattioli "stacked" on top of Acevedo in what he described as a "rear naked choke hold." However, Roach conceded in his deposition and criminal trial testimony that "there was not a way for me to tell if there was actually pressure on the neck." (Roach Trial Trans. at 9:8-24, 13:4-16, 25:19-22)

70. Mattioli did not place Acevedo in a rear-naked choke hold. (Mattioli Dep. at 115, 164)

71. Mattioli did not choke or apply pressure to Acevedo's neck, nor did he strangle or suffocate Acevedo. (Mattioli Dep. at 99,107-108, 110-111, 154:10-12)

---

[1] *State of Wisconsin v. Michael Mattioli*, Milwaukee County Circuit Court Case No. 2020CF1991, filed May 13, 2020.

72. Mattioli did not have access to handcuffs at the time of the incident. (Mattioli Dep. at 87)

Dated at Wauwatosa, Wisconsin, this 1st day of August 2025.

**WIRTH + BAYNARD**
Attorneys for Defendant, Michael Mattioli

By: */s/ Jasmyne M. Baynard*
Jasmyne M. Baynard, WI Bar No. 1099898
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979
Email: jmb@wbattys.com