IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JOSE ACEVEDO, Individually, and as
Special Administrator of the
ESTATE OF JOEL ACEVEDO,

        Plaintiffs,

v.                                                CASE NO. 23cv00489

MICHAEL MATTIOLI,
ROBERT ROACH,
ALFONSO MORALES, and CITY
OF MILWAUKEE,

        Defendants.
_____

**DEFENDANT CITY'S RESPONSE TO**
**DEFENDANT MATTIOLI'S PROPOSED FINDINGS OF FACT**
_____

      NOW COMES Defendant City of Milwaukee, through its counsel, City Attorney Evan Goyke, represented by Assistant City Attorney Clint B. Muche, pursuant to Fed. R. Civ. P. 56 and Civil L. R. 56, in response to Defendant Michael Mattioli's (Mattioli) proposed findings of fact, *see* ECF No. 70, in support of the Mattioli's motion for summary judgment (ECF No. 51):

**Parties and Background**

    1. At the time of his death, Joel Acevedo (Acevedo) was an adult resident of the State of Wisconsin. (ECF 23 ¶ 4).

**RESPONSE:** No dispute. *See also* ECF No. 60 (Def. City of Milwaukee's Proposed Findings of Fact), ¶ 1.

    2. Plaintiff, Jose Acevedo, is the father of Joel Acevedo and serves as the Special Administrator for the Estate of Joel Acevedo. (ECF 23 ¶ 5)

**RESPONSE:** No dispute. *See also id.*, ¶ 2.

    3. Defendant Michael Mattioli (Mattioli) is an adult resident of the State of Wisconsin and was employed with the City of Milwaukee Police Department from 2006 until he resigned in September of 2020. (Baynard Decl. Exh. A – Deposition of Michael Mattioli (hereinafter Mattioli

Dep.) 6-7, 27, 63, 138-139, 147; Declaration of Michael Mattioli (hereinafter Mattioli Decl.) at ¶ 1)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 3-6.

4. Defendant City of Milwaukee is a Wisconsin municipal corporation whose principal offices are located in Milwaukee, Wisconsin. (ECF 23 ¶ 9)

**RESPONSE:** No dispute. *See also id.*, ¶ 10.

**Jurisdiction and Venue**

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction over the Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343. (ECF 23 ¶¶ 1-2)

**RESPONSE:** No dispute. *See also id.*, ¶ 11

6. The Eastern District of Wisconsin is the proper federal venue for this action under 28 U.S.C. § 1391(b) because it is where all acts alleged in the Amended Complaint occurred. (ECF 23 ¶ 3)

**RESPONSE:** No dispute. *See also id.*, ¶ 12.

**The Events of April 18-19, 2020**

7. Mattioli met Acevedo at the Northwestern Mutual Building in 2019 while Mattioli was working as a uniformed Milwaukee police officer and while Acevedo was working as a security guard. (Mattioli Dep. at 65-66, 142)

**RESPONSE:** No dispute.

8. On the evening of April 18, 2020, Mattioli hosted a bonfire at his home with three friends—Christopher Peters, Andrew Janowski, and Joel Acevedo. (Mattioli Dep. at 64; Baynard Decl. Exh. C, Excerpts of the Trial Transcript in State of Wisconsin v. Michael A. Mattioli of Andrew Janowski's testimony (hereinafter Janowski Trial Trans.) at 93)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 14-15.

9. The night was uneventful, and the group sat around a bonfire drinking until it got too cold and they moved the gathering inside to the kitchen table. (Mattioli Dep. at 64, 69-70, 154; Baynard Decl. Exh. D – Excerpts of the Trial Transcript in State of Wisconsin v. Michael A. Mattioli of Christopher Peters' testimony (hereinafter Peters Trial Trans.) at 13-16; see also Janowski Trial Trans. at 76:1-9)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 16-18.

10. Mattioli, Peters, Janowski, and Acevedo all four friends consumed alcohol. (Mattioli Dep. at 64)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 18-19.

11. Acevedo and Peters had also used cocaine, but Mattioli was unaware of the drug use as the two did so in secret. (Mattioli Dep. at 64, 69-70, 164-165; Peters Trial Trans. at 12-13; 33: 15-19; see also Janowski Trial Trans. at 74:22-24)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 20, 32.

12. At some point in the night, Acevedo asked Peters if he wanted to go in on the purchase of cocaine. (Peters Trial Trans. at 62:14-64:11)

**RESPONSE:** No dispute. *See also id.*, ¶ 22.

13. Because the group was drinking, Peters, Janowski, and Acevedo all stayed the night at Mattioli's house. (Mattioli Dep. at 71-72, 146)

**RESPONSE:** No dispute. *See also id.*, ¶ 19.

14. Mattioli went to sleep in his room on the second floor, Janowski went to sleep on the couch in the living room on the main level, and Peters went to sleep in the basement. (Mattioli Dep. at 71; Janowski Trial Trans. at 77; Peters Trial Trans. at 17)

**RESPONSE:** No dispute. *See also id.*, ¶ 23.

15. In the early morning hours of April 19, 2020, Mattioli awakened in his dark bedroom to Acevedo rummaging through his pants pockets. (Mattioli Dep. at 72)

**RESPONSE:** No dispute. *See also id.*, ¶ 29-31.

16. Mattioli believed that Acevedo was trying to rob him. (Mattioli Dep. at 72-73)

**RESPONSE:** The City does not dispute that Mattioli formed a belief that Acevedo was trying to "steal" from him, but denies that the cited materials necessarily support the essential elements of the crime of robbery as defined under Wisconsin law. *See also id.*, ¶ 31, 37-39.

17. Mattioli observed Acevedo standing over him, yelling and moving fast. Based on Acevedo's behavior, Mattioli believed that he had not slept. (Mattioli Dep. at 73-73)

**RESPONSE:** No dispute. *See also id.*, ¶ 30.

18. Acevedo had turned into a completely different person, became super hostile and irate, which was confusing and concerning to Mattioli because a couple of hours earlier, they were all friends having a good time. (Mattioli Dep. at 75; Janowski Trial Trans. at 73:22-24)

**RESPONSE:** No dispute. *See also id.*, ¶ 31.

19. Based on Acevedo's erratic behavior, Mattioli wanted him out of his house and repeatedly told Acevedo to leave his house as he followed him down the stairs into the living room. (Mattioli Dep. at 75-76; Janowski Trial Trans. at 80:22-24, 100; Peters Trial Trans. at 19)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 33-34.

20. Acevedo turned towards Mattioli in an aggressive manner and squared up like he was going to fight. (Mattioli Dep. at 76-77)

**RESPONSE:** No dispute.

21. Mattioli perceived Acevedo to be a physical threat. (Mattioli Dep. at 78)

**RESPONSE:** No dispute.

22. Acevedo was a large person, bigger and stockier than Mattioli, and stood at about 6'3" and 270 pounds. (Mattioli Dep. at 76-77; Peters Trial Trans. at 49:22-50:6)

**RESPONSE:** No dispute.

23. The commotion caused Janowski and Peters to wake up. (Mattioli Dep. at 78-79; Peters Trial Trans. at 17:15-18:14; Janowski Trial Trans. at 77:22-78:22)

**RESPONSE:** No dispute that Janowski and Peters were awoken during the argument between Mattioli and Acevedo. *See also id.*, ¶¶ 35-37.

24. Acevedo refused to leave Mattioli's house. (Mattioli Dep. at 78, Peters Trial Trans. at 19:4-20:17, 42-43, Janowski Trial Trans. at 101:1-2)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 37-39.

25. Peters was scared and described Acevedo as enraged and aggressive. (Peters Trial Trans. at 21-25, 60:2-4)

**RESPONSE:** No dispute. *See also id.*, ¶ 62.

26. Acevedo lunged at Mattioli and forcefully struck him in the chest and caused him to step back. (Mattioli Dep. at 78-79, 155; Peters Trial Trans. at 20:18-21:8)

**RESPONSE:** No dispute. *See also id.*, ¶ 40.

27. Acevedo then punched Peters in the face so hard that Mattioli heard a crack and saw Peters go backward. (Mattioli Dep. at 79-80, 155; Peters Trial Trans. at 21:23-22:11, 50-51; Janowski Trial Trans. at 102-102)

**RESPONSE:** No dispute. *See also id.*, ¶ 41.

28. Acevedo punched Peters in the nose and then again in his right eye. (Peters Trial Trans at 21:23-22:4, 28:19-29:6, 50-51)

**RESPONSE:** No dispute. *See also id.*, ¶ 41.

29. Acevedo's assaults on Mattioli and Peters were unprovoked. (Mattioli Dep. at 79-80, 164; Peters Trial Trans. at 47:5-25, 52; Janowski Trial Trans. at 103:3-11)

**RESPONSE:** No dispute.

30. Acevedo punched Peters with so much force that he lost his balance and knocked over a glass lamp as he fell to the ground. (Mattioli Dep. at 80)

**RESPONSE:** No dispute. *See also id.*, ¶ 42.

31. The confrontation occurred in a very small area of Mattioli's living room and moved into the adjoining small kitchen. (Peters Trial Trans. at 62:1-13; Mattioli Dep. at 155)

**RESPONSE:** No dispute.

32. Mattioli got on top of Acevedo and used his body weight to try and keep him on the ground because he knew that as soon as Acevedo got up, he was going to continue to throw punches, and Mattioli wanted to prevent that. (Mattioli Dep. at 80-81, 86)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 43-45.

33. By this point in the confrontation, Mattioli had witnessed Acevedo commit several misdemeanor and felony crimes, including physical assault, robbery with the use of force, theft from a person, and property damage. (Mattioli Dep. at 81:3-83:6)

**RESPONSE:** No dispute that Mattioli believed that cause existed to arrest Acevedo under Wisconsin law.

34. Janowski became involved in the physical fight on the kitchen floor. (Jankowski Trial Trans. at 83)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 45-46.

35. Mattioli, Acevedo, and Jankowski wrestled around a little on the ground in the kitchen as Acevedo was standing up and Mattioli was trying to keep him on the ground. (Mattioli Dep. at 86; Peters Trial Trans. at 23:2-6, 53; Janowski Trial Trans. at 83)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 42-46.

36. At approximately 7:29 a.m., Mattioli called 911, identified himself as an officer, and requested assistance at his home at 4502 W. Cleveland Avenue in Milwaukee. (ECF 23 ¶ 11; Mattioli Dep. at 86)

**RESPONSE:** No dispute that Mattioli called 911 at 7:28:53 a.m., and stated "I am an off-duty officer, and I need help at my house." *See also id.*, ¶¶ 48-49.

37. Mattioli called 911 because he needed help and wanted the Milwaukee Police Department to arrest Acevedo. (Mattioli Dep. at 87)

**RESPONSE:** No dispute that Mattioli wanted other Milwaukee police officers to respond and arrest Acevedo.

38. Acevedo kept fighting and knocked the phone out of Mattioli's hand. Peters picked up the phone and told the dispatcher that Acevedo was attacking them and to please come as soon as possible. (Peters Trial Trans. at 24:18-25:5-12, 58:11-25)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 60-61.

39. Acevedo's behavior and continued resistance posed a danger to Mattioli and others in the house. (Mattioli Dep. at 78, 82-83, 101-102)

**RESPONSE:** No dispute that Mattioli, Peters, and Janowski all perceived Acevedo to be a threat to them at the time. *See also id.*, ¶ 57, 62.

40. After wrestling for several minutes, Mattioli and Acevedo were on the ground in a position with Acevedo was on his stomach and Mattioli was on top of him with his knees anchored on the ground, essentially straddling Acevedo. (Mattioli Dep. at 95-96)

**RESPONSE:** No dispute. *See also id.*, ¶ 46.

41. Janowski laid across Acevedo's legs because of Acevedo's size and because he did not want Acevedo to cause any further harm to anyone. (Mattioli Dep. at 92; Jankowski Trial Trans. at 83, 106; Peters Trial Trans. at 24:23-25:)

**RESPONSE:** No dispute. *See also id.*, ¶ 57.

42. Mattioli's upper body was lying on top of Acevedo's upper body, and Mattioli's right arm was under Acevedo's chin/neck area. (Mattioli Dep. at 95-97, 99)

**RESPONSE:** No dispute.

43. Acevedo was trying to push off the ground, and Mattioli was trying to push him back down. (Mattioli Dep. at 97; Peters Trial Trans. at 56:19-57:6; Janowski Trial Trans. at 85-86)

**RESPONSE:** No dispute. *See also id.*, ¶ 61.

44. Mattioli and Janowski were trying to get Acevedo under control, and Acevedo was angry and flailing and yelling. (Peters Trial Trans. at 55:7-18; Janowski Trial Trans. at 86:4-8)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 44-47, 53-55, 57, 60-61.

45. Mattioli did not put his entire body weight on Acevedo because he had weight on his elbow and arm, and his knees were on the ground. (Mattioli Dep. 107, 110-111)

**RESPONSE:** No dispute.

46. At some point, Acevedo stopped struggling and started to calm down. Mattioli was exhausted, and it appeared to him that Acevedo was exhausted too. (Mattioli Dep. at 99, 104:24105:9, 162)

**RESPONSE:** No dispute that Mattioli was exhausted, and reasonably believed that Acevedo was as well.

47. Once Acevedo stopped struggling, Mattioli checked and saw Acevedo was breathing and thought everything was okay. Mattioli felt relief because he believed that Acevedo had stopped fighting and knew that police would be there any minute to help him. (Mattioli Dep. at 106-107)

**RESPONSE:** No dispute.

48. Mattioli stayed on top of Acevedo with his knees and elbows on the ground, and Janowski stayed on the back of Acevedo's legs until the police arrived. (Mattioli Dep. at 88, 89, 94, 100, 121; Janowski Trial Trans. at 86:21-87)

**RESPONSE:** No dispute. *See also id.*, ¶ 53.

49. At approximately 7:38 a.m., Milwaukee Police Officer Defendant Roach and his partner arrived and made contact with Peters in the front yard of Mattioli's residence. (ECF 23 ¶ 14; Baynard Decl. Exh. B – Deposition of Robert Roach (hereinafter Roach Dep.) at 25; Peters Trial Trans. at 26-27)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 64-67.

50. Mattioli still thought Acevedo was a threat and told the MPD officers multiple times to handcuff Acevedo. (Mattioli Dep. at 101; Baynard Decl. Exh. E – Excerpts of the Trial Transcript in State of Wisconsin v. Michael A. Mattioli of Robert Roach's testimony (hereinafter Roach Trial Trans.) at 19:19-22)

**RESPONSE:** No dispute that Mattioli perceived Acevedo to be a threat to himself and others, and that he told Roach to handcuff him.

51. Mattioli and Janowski got off Acevedo and took a step back. At that time, Officer Roach checked Acevedo for a pulse and started CPR. (Roach Dep. at 83-84)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 68-69.

52. Mattioli was in disbelief and did not know that Acevedo had stopped breathing and did not observe Acevedo in any respiratory distress during the altercation. If he had, he would have changed the situation. (Mattioli Dep. at 98:9-12, 101-102, 104, 107)

**RESPONSE:** No dispute.

53. Mattioli did not recall any statements Acevedo made while they were wrestling on the ground and did not recall Acevedo saying anything like "let me go home." (Mattioli Dep. at 159; Janowski Trial Trans. at 86:15-16)

**RESPONSE:** No dispute. *See also id.*, ¶ 50.

54. Mattioli did not observe Acevedo to be suffering from any medical emergency during their altercation. (Mattioli Dep. at 91)

**RESPONSE:** No dispute.

55. As a police officer making an arrest, Mattioli has held people on the ground until he could get them into handcuffs in front of other MPD officers and supervisors. No one has ever told Mattioli that it was dangerous or excessive force to use his body weight to hold someone on the ground. No one has ever died. (Mattioli Dep. at 93-94, 154, 161)

**RESPONSE:** No dispute.

**Additional Relevant Facts**

56. On April 18 and 19, 2020, Mattioli was employed as a Milwaukee Police Department Officer and in good standing but was off duty at all times during his interaction with Acevedo. (Mattioli Dep. at 63)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 3-5.

57. Acevedo's medical history demonstrates a compromised respiratory system, chronically asthmatic lungs, exacerbated by an immunoglobulin deficiency, severe pulmonary insufficiency, and obesity. (Baynard Decl. Exh. F – Excerpts of the Trial Transcript in State of Wisconsin v. Michael A. Mattioli, including Dr. Jeffrey Jentzen's testimony (hereinafter Jentzen's Trial Trans.) at 59, 86, 92)

**RESPONSE:** No dispute.

58. Acevedo smoked cigarettes. (Peters Trial Trans at 33)

**RESPONSE:** No dispute.

59. At the time of the incident, Mattioli was unaware of Acevedo's health history with his lungs and asthma. (Mattioli Dep. at 97, 162)

**RESPONSE:** No dispute.

60. Acevedo had a post-mortem urine sample collected on April 19, 2020, at approximately 11:32 am, which tested positive for cocaine and ethanol. (Baynard Decl. Exh. F – Excerpts of the Trial Transcript in State of Wisconsin v. Michael A. Mattioli, including Dr. Jimmie Valentine's testimony (hereinafter Valentine's Trial Trans.) at 4, 9, 12:24-13:18)

**RESPONSE:** No dispute. *See also id.*, ¶ 32.

61. Acevedo's BAC at 11:32 am (approximately 3 hours after the incident) was estimated at .2. (Valentine Trial Trans at 13)

**RESPONSE:** No dispute.

62. As a result of Acevedo's death, Mattioli was charged with first-degree reckless homicide. The matter proceeded to trial in November of 2023 and resulted in a not guilty verdict in favor of Mattioli. 1 (Mattioli Dep. at 134)

**RESPONSE:** No dispute. *See also id.*, ¶ 77-78.

63. The Estate failed to serve a written Notice of Circumstances upon Mattioli and his employer within 120 days of the event. (ECF 32 at 33 ¶¶3-4; Mattioli Decl. ¶ 2)

**RESPONSE:** No dispute. *See also* Defendant City of Milwaukee's Additional Proposed Findings of Fact, ¶¶ 74-77, *infra*.

64. Mattioli did not intend to hurt or kill Acevedo. (Mattioli Dep. at 85, 166)

**RESPONSE:** No dispute.

65. Mattioli did punch, push, kick, or strike Acevedo. (Mattioli Dep. at 79, 163; Peters Trial Trans. at 54:12-20; Janowski Trial Trans. at 102:1-5)

**RESPONSE:** No dispute that the cited materials support the proposition "Mattioli did ***not*** punch, push, kick, or strike Acevedo."

66. Mattioli had access to his firearm but did not use it against Acevedo during the altercation. (Mattioli Dep. at 83, 163)

**RESPONSE:** No dispute.

67. Mattioli acted in self-defense, and his only intent was to restrain Acevedo until help came to prevent further injury to himself and others. (Mattioli Dep. at 166)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 38-44, 47, 52-55.

68. Acevedo was the aggressor in the confrontation. (Janowski Trial Trans. at 108:17-24)

**RESPONSE:** No dispute. *See also id.*, ¶¶ 38-44.

69. Roach entered the home and observed Mattioli "stacked" on top of Acevedo in what he described as a "rear naked choke hold." However, Roach conceded in his deposition and criminal

---

[1] *State of Wisconsin v. Michael Mattioli*, Milwaukee County Circuit Court Case No. 2020CF1991, filed May 13, 2020.

trial testimony that "there was not a way for me to tell if there was actually pressure on the neck." (Roach Trial Trans. at 9:8-24, 13:4-16, 25:19-22)

**RESPONSE:** No dispute. *See also id.*, ¶ 68.

70. Mattioli did not place Acevedo in a rear-naked choke hold. (Mattioli Dep. at 115, 164)

**RESPONSE:** The City does not dispute that the cited materials support this proposition, but denies that the record as a whole necessarily supports this finding. *See* ECF No. 73-4 (Roach Deposition), 64:22-66:20, 68:5-69:24.

71. Mattioli did not choke or apply pressure to Acevedo's neck, nor did he strangle or suffocate Acevedo. (Mattioli Dep. at 99,107-108, 110-111, 154:10-12)

**RESPONSE:** No dispute.

72. Mattioli did not have access to handcuffs at the time of the incident. (Mattioli Dep. at 87)

**RESPONSE:** The City does not dispute that the cited materials support this proposition, but denies that the record as a whole necessarily supports this finding. *See* City's Additional Proposed Finding of Fact, ¶ 77, *infra*.

<u>DEFENDANT CITY OF MILWAUKEE'S</u>
<u>ADDITIONAL PROPOSED FINDINGS OF FACT</u>

73. Defendant City of Milwaukee incorporates by reference its proposed findings of fact, see ECF No. 60, submitted in support of its motion for summary judgment (ECF No. 59) as "additional findings of fact" pursuant to Civ. L. R. 56(b)(2)(B)(ii).

74. Mattioli never formed a subjective intent to serve the City of Milwaukee during the incident. *See* ECF No. 63-2 (Mattioli Dep.), 122:6-122:22. *See also* ECF No. 74 (City's Resp. to Pl.'s Proposed Findings), ¶ 7.

75. Plaintiff failed to serve a written Notice of Circumstances of Claim upon the City of Milwaukee within 120 days of the event as required by Wis. Stat. § 893.80(1d)(a). *See* ECF No. 62 (Owczarski Decl.), ¶ 6.

76. Plaintiff has never served an Itemized Statement of Relief Sought upon the City of Milwaukee as required by Wis. Stat. § 893.80(1d)(b) before a suit under state law may be "brought or maintained." *Id*. *See also* Wis. Stat. § 893.80(1d).

77. Mattioli had access to handcuffs inside his home during the incident *See* Muche Declaration, ¶ 3, Ex. 1 (Crime Scene Photographs).

Dated and signed at Milwaukee, Wisconsin this 10th day of September, 2025.

    EVAN GOYKE
    City Attorney

    s/ Clint B. Muche
    CLINT B. MUCHE
    Assistant City Attorney
    State Bar No. 1131629

    *Attorneys for City of Milwaukee*

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov

1032-2023-681/xxxxxx