IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISON

| | |
|---|---|
| JOSE ACEVEDO, individually, and as Special Administrator of the Estate of JOEL ACEVEDO;<br><br>*Plaintiff,*<br><br>v.<br><br>MICHAEL MATTIOLI, et al.,<br><br>*Defendants.* | **CASE NO. 23-cv-00489**<br><br>**JURY TRIAL DEMANDED** |

**Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment**

**A. Mattioli's Failure to Respond Deems the Facts Admitted; Summary Judgment on "Color of Law" and "Scope of Employment" is Proper Against Him.**

Defendant Mattioli failed to respond to Plaintiff's Partial Motion for Summary Judgment. Because Mattioli failed to respond, as to this Defendant, Plaintiff's proposed findings of fact are deemed admitted.

Federal Rule of Civil Procedure 56(a) provides: "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Federal Rule of Civil Procedure 56(e) provides: "If a party fails to properly support an assertion of fact or

1

fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Similarly, Civil L. R. 56(b)(4) (E.D. Wis.) provides: "The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." This Court has enforced these rules. *See McDowell v. Johnson*, No. 24-cv-1175-BHL, Decision and Order (Doc. 35) at p.2 (E.D. Wis. Sept. 2, 2025) ("Defendant's proposed facts are deemed admitted for the purpose of deciding summary judgment.")

This result is consistent with Seventh Circuit's precedent: *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have also repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994) ("We have also repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.")

It is well-settled that police officers exercising official authority act under color of law, even if it is determined that he misused that authority. *Wilson v. Price,* 624 F.3d 389, 392 (7th Cir. 2010); *Honaker v. Smith,* 256 F.3d 477, 484 (7th Cir. 2001). Likewise, under Wisconsin law, "an employee may be found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer. There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose." *Olson v. Connerly,* 156 Wis. 2d 488, 499 (Wis. 1990).

On this undisputed record, and consistent with both this Court and Seventh Circuit precedent, Plaintiff's Partial Motion for Summary Judgment should be granted against Defendant Mattioli on both issues: that when Mattioli used force against Acevedo, he acted (1) under "color of law," and (2) within the "scope of employment."

**B. As a Matter of Law, Mattioli Acted "Under Color of Law"; Any Purported Factual Disputes Are Insufficient to Avoid Summary Judgment.**

The City improperly includes extensive argument and disclaimers in its response to Plaintiff's Proposed Statements of Fact. A close review, however, reveals that the City is unable to point to genuine disputes of fact that are material to the relevant inquiry.

For example, the City speciously argues that because Mattioli apparently said, "I'm an off-duty police officer and I need help at my house" instead of "I am a police officer and I need help" that Mattioli did not invoke his authority as a police officer. *See Doc. 74 at ¶2*. The City completely missed the issue. Whether Mattioli said on-duty or off duty is not the issue and any apparent dispute related to same does not change the outcome of the relevant inquiry. Rather, the issue is that when Mattioli called 911, he identified himself *as a police officer*, instead of as a private citizen. When private citizens call 911, they say, "my name is Michael Mattioli, and I need the police to respond." A private citizen never identifies themselves as a "police officer" and there is no reason for a police officer to identify themselves as such unless they believe that fact is relevant. That fact would only be relevant for the purpose of communicating that they are cloaked with, and invoking, their authority as a police officer.

Moreover, the City's claim that Mattioli did not identify himself to Acevedo as a police officer is undermined by the record. Mattioli told the 911 dispatcher that he was a police officer requesting a police response, *while he was with Acevedo and Christopher Peters* (both of whom already knew as much). We know this because it is undisputed that both Acevedo and Peters can be heard on the 911 call.

Similarly, the City makes much to do about the issue of whether at the moment Mattioli detained Acevedo, he subjectively decided that he was performing an arrest.

But the City readily admits that "There is no dispute that Mattioli was asked whether he was trying to arrest Acevedo during the criminal trial and he responded, "[i]n a way, yes." *Doc. 75, at pp.8-9*. The City further admits that Mattioli admitted during his deposition, "I detained him until the police got there. That's what I did." *Id. at p.9*. For the present inquiry, the label is not relevant. "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975). And *that* is what this police officer did here.

The City claims, "There is no evidence Mattioli intended or purported to exercise any official power—beyond that possessed as a private citizen, to defend himself within his home and to request police assistance." This is neither true nor dispositive. *See Doc. 75, at p.9*. By the City's own admissions above, Mattioli did not just defend himself. Rather, he was "trying to arrest Acevedo" ("[i]n a way, yes") and "detained him until the police got there," for alleged violations of state law. *SOF at ¶¶6- 7*. If Mattioli was simply defending himself like a private citizen as the City claims, he would have let him go when he tried to leave.

The City argues that "there is no evidence here that Mattioli was equipped with or used Milwaukee Police Department equipment." *Doc. 75, at p.15*. That is not a disputed fact (let alone a material one) nor a fact on which Plaintiff relies in support of his argument. Regardless, while Mattioli may not have used MPD

5

equipment, he used MPD police restraint techniques. *See Plaintiff's Response to City's PSOF at ¶¶80-82.*

Citing *Lindke v. Freed,* 601 U.S. 187, 190-91 (2024), the City argues that "Plaintiff's claims must fail due to insufficient evidence upon which a rational factfinder could conclude that Mattioli either formed a subjective intent to make an arrest or outwardly manifested such intent to Acevedo or others." The City's argument fails.

It is undisputed that on the date in question, Mattioli was a police officer employed by MPD, in good standing; the incident occurred within the City limits; and that MPD police officers enjoy a lawful privilege to use force during the performance of arrests for alleged violations of state criminal laws. As such, it s undisputed that Mattioli possessed the requisite state authority.

It cannot be credibly disputed that Mattioli exercised the authority that he possessed. As previously stated, Mattioli called the 911 Center and invoked his police authority, and in Acevedo and Peters' presence, identified himself as a police officer, and requested assistance. *SOF at ¶ 2.* Again, private citizens do not identify themselves to 911 and other citizens as police officers, and police officers only identify themselves as such if their intention is to communicate that they are cloaked with, and invoking, their law enforcement authority.

Mattioli admits that in response to his invocation of his police authority, police officers responded to his "request for backup." *SOF at ¶ 3*. Furthermore, Mattioli did not leave or detain Acevedo for a non law enforcement reason. Rather, Mattioli detained Acevedo for alleged violations of state law and for crimes committed against himself and a third party. *SOF at ¶¶6- 7*. Moreover, Mattioli admits that he used force against Acevedo during the performance of an arrest. *SOF at ¶¶ 4-5*. The technique used was a technique that he learned and used on the job as a police officer. *See Plaintiff's Response to City's PSOF at ¶¶80-82*. Private citizens do not learn and/or use law enforcement force techniques.

Mattioli admitted to investigators that he had conducted an arrest, held Acevedo's arms in a handcuffing position, and directed a backup officer to handcuff Acevedo. *See Plaintiff's Response to City's PSOF at ¶¶58-59*. Private citizens do not position people for handcuffing or give orders to police officers.

The City's reliance on *Barna v. City of Perth Amboy,* 42 F.3d 809 (3d Cir. 1994) is misplaced, and the Court's decision, misstated. In *Barna,* the Third Circuit held that during the start of the incident, off duty officers were not acting under color of law when they were involved in a purely private, personal dispute, acted outside their jurisdiction, never purported to act in an official capacity or exercise state-conferred authority, did not call 911 to request backup, and attempted to leave instead of effect an arrest. *The Court, however, found that the Officers acted under*

7

*color of law but were entitled to immunity when they pointed their firearms at Barna and told him to drop his gun.*

While the evening may have started as a private social event, like in *Barna,* the private social event transformed into a police incident. In *Barna,* the incident started as a personal fight between several persons. However, it transformed into a police incident when the officers pointed their firearms at an armed individual. Similarly, the incident in this matter transformed into a police incident when Mattioli used deadly force during the performance of an arrest in response to alleged crimes of violence. Unlike in *Barna,* Mattioli acted within his jurisdiction and did not attempt to leave the scene. Moreover, Mattioli admitted to investigators that he had conducted an arrest, held Acevedo's arms in a handcuffing position, and directed a backup officer to handcuff Acevedo. *See Plaintiff's Response to City's PSOF at ¶¶58-59.*

The City's reliance on *DiDonato v. Panatera,* 24 F.4th 1156 (7th Cir. 2022) is similarly misplaced. In *DiDonato,* the Plaintiff slipped, fell, and suffered a head injury in the Defendant's home. Defendant, who was employed as a paramedic, found Plaintiff disoriented and bleeding on the floor. Instead of calling 911, driving Plaintiff to the hospital, or using his paramedic training to treat her, the Defendant allegedly simply cleaned and wrapped her head in a towel, moved her to his bed, and sexually assaulted her while she drifted in and out of consciousness. The Court

determined that the Defendant had not acted under color of law because Plaintiff had not alleged that "action or inaction was a misuse of the City's power or that his wrongdoing was made possible because he was 'clothed with the authority of state law.'" *DiDonato,* 24 F.4th 1156 (*quoting Barnes,* 943 F.3d at 831). The Court explained that "common decency, not his employment status," is what required the Defendant to act to stop the bleeding, and "self-serving opportunism, not an exercise of state authority," that prevented Plaintiff from leaving the Defendant's home. *Id.*

Unlike in *DiDonato,* Mattioli called the 911 Center and invoked his police authority, identified himself as a police officer, and requested assistance. *SOF at ¶ 2.* Mattioli admits that in response to his invocation of his police authority, police officers responded to his "request for backup." *SOF at ¶ 3.* Furthermore, unlike *DiDonato,* Mattioli did not detain Acevedo for a non-law enforcement personal reason (personal sexual gratification). Rather, Mattioli detained Acevedo for alleged violations of state law and for crimes committed against himself and a third party. *SOF at ¶¶6- 7.* Moreover, unlike *DiDonato,* Mattioli admits that he used force against Acevedo during the performance of an arrest. *SOF at ¶¶ 4-5*.

The City's reliance on *Hughes v. Meyer,* 880 F.2d 967 (7th Cir. 1989) is similarly misplaced. An off duty DNR officer and his wife were on private property hunting. The owners of the property detained them. The DNR officer called law enforcement and told his side of the story. The officers decided to arrest the property

9

owners for false imprisonment. The Court held that the DNR Warden did not act under color of law when he provided information regarding the alleged criminal act, because unlike the instant matter, he did not have the authority to enforce the criminal law in question, and thus, was not doing so by virtue of the authority granted to him by his state employment. Moreover, unlike the instant matter, the DNR Warden did not make any recommendation or request that the Plaintiffs be arrested. *Id. at 972.*

The City's reliance on *Latuszkin v. City of Chicago,* 250 F.3d 502 (7th Cir. 2001) is similarly misplaced. In *Latuszkin,* Plaintiff sued an off-duty Chicago police officer, pursuant to § 1983, who caused a fatal DUI accident. In holding that the officer did not act under color of law the Court explained that the determination hinges on the nature of specific conduct. In that case, while the officer may have drank alcohol at a department party, the Plaintiff did not allege that the officer acted under color of law, engaged in police activity, displayed any police power, or that he possessed any indicia of his office at the time of the accident. Moreover, the officer was off duty, in a private vehicle, and outside of Chicago.

In contrast, Mattioli acted within his jurisdiction and pursuant to his authority to enforce state law. Mattioli detained Acevedo for alleged violations of state law and for crimes committed against himself and a third party. *SOF at ¶¶6- 7.* Moreover, Mattioli admits that he used force during the performance of an arrest. *SOF at ¶¶ 4-*

*5*. Finally, there is no dispute because Mattioli admitted to investigators that he had conducted an arrest, held Acevedo's arms in a handcuffing position, and directed a backup officer to handcuff Acevedo. *See Plaintiff's Response to City's PSOF at ¶¶58-59*.

Only one reasonable conclusion can be reached based on the undisputed material facts of this case – that Mattioli acted under color of law. As such, Plaintiff respectfully requests that the Court decide as a matter of law that when Mattioli used force against Acevedo he acted under color of law.

C. **Mattioli Acted in the Scope of His Employment**

The fact that Mattioli acted under color of law is not dispositive of the issue of whether Mattioli acted within the scope of his employment. When interpreting state law, a federal court must determine how the state's highest court would rule. *See In re: Zimmer, Nexgen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). The Wisconsin Supreme Court generally looks to the common-law agency understanding of "scope of employment" to interpret the same phrase in *section 895.46. Javier v. City of Milwaukee,* 670 F.3d 823, 829 (7th Cir. 2012).

A police officer can be acting within the scope of his employment even if the officer acted intentionally or criminally, and even if the officer's use of force was excessive or the officer misused his authority to use force. *Id.; Johnston v. Chi., St. Paul, Minneapolis & Omaha Ry. Co.,* 130 Wis. 492, 110 N.W. 424, 426 (Wis. 1907)

11

("A master is liable for the tortious act of the servant done in the scope of his employment, though the master did not sanction it, or even though he forbade it."); *Restatement (Third) of Agency § 7.07 cmt. c (2006)* ("[C]onduct is not outside the scope of employment merely because an employee disregards the employer's instructions."); *Restatement (Second) of Agency § 230 (1958)* ("An act, although forbidden, or done in a forbidden manner, may be within the scope of employment."); *Restatement (Second) of Agency § 231 (1958)* ("An act may be within the scope of employment although consciously criminal or tortious.").

In *Graham,* an on-duty police officer killed a suspected drug trafficker during an arrest, shooting him twice in the head after he was handcuffed and while he was lying face down on the ground. *Graham v. Sauk Prairie Police Com.,* 915 F.2d 1085, 1088 (7th Cir. 1990). The municipal employer argued that it could not be held liable for the judgment under Wis. Stat. § 895.46 because the officer exceeded his authority to use force and therefore was not acting within the scope of employment. *Id.* at 1088-89. The Seventh Circuit disagreed and upheld the district court's conclusion as a matter of law that the statute applied. *Id.* at 1095.

The key question in deciding the scope of employment question is whether the police officer "was acting as a vigilante for his own purposes or as a police officer." *Javier,* 670 F.3d at 831 (*citing Olson v. Connerly,* 457 N.W.2d 479, 483 (Wis. 1990)). The City argues that "*Javier* is unhelpful to Plaintiff because it merely

stands for the proposition that misguided attempts to perform one's duties are within the scope of employment, when Plaintiff cannot show that Mattioli intended to perform an official act, or conveyed to Acevedo or others that he was acting as a police officer, and the incident occurred inside Mattioli's own home." *Doc. 74 at p.21*. As explained below, the City's argument is not supported by the record.

In support of its argument that an officer's subjective intent to perform his duties on behalf of the employer is required to establish scope of employment, *Doc. 74 at p.24,* the City claims *Perez v. Guetschow,* No. 23-C-153, 2025 U.S. Dist. LEXIS 43547 (E.D. Wis. Mar. 11, 2025) supports its argument. It does not. In *Perez,* the defendant testified that when the incident occurred, he was working for the school, was "off duty" and "wasn't an officer in that moment." *Id.; Doc. 74 at p.24.*

Mattioli admits that on the date of the incident he was employed by the Milwaukee Police Department, as a police officer, in good standing. *SOF at ¶ 1.* Importantly, Mattioli did not call the 911 Center and simply request help as a private citizen would do. Rather, in the presence of both Peters and Acevedo, Mattioli invoked his police authority when he called the 911 Center and identified himself as a police officer. *SOF at ¶ 2.* Mattioli admits that in response to his invocation of his police authority, police officers responded to his "request for backup." *SOF at ¶ 3.*

Furthermore, Mattioli admits that he used force against Joel Acevedo during the performance of an arrest for a possible violation of Wisconsin state and local law.

13

*SOF at ¶¶ 4-5*. Specifically, Mattioli admits that when he was performing the arrest, "what was going through my head at the time was that Joel (Acevedo) had just tried to steal from me" . . . "was thinking of the crime of robbery with use of force, which is a felony." *SOF at ¶ 6*. Mattioli also admits that in addition to acting on behalf of himself, he acted on behalf of another crime victim. *SOF at ¶ 7*.

Mattioli admits that when he is making an arrest, he does so on behalf of the Milwaukee Police Department, while acting pursuant to the policies of the Milwaukee Police Department. *SOF at ¶¶ 8-9*. When Mattioli exercised his police authority to use force against Acevedo while performing an arrest, his conduct did not violate the Milwaukee Police Department Standard Operating Procedure (SOP) 220 – Arrest Authority – which governs the authority the City of Milwaukee provides to its police officers to perform arrests. *SOF at ¶¶ 10-15*.

While Mattioli had consumed alcohol at a time before he arrested Acevedo, the policy only "discourages" officers from exercising their police authority on behalf of the police department but does not forbid it. *SOF at ¶ 14*. Moreover, since Mattioli was a crime victim, per the text of the policy, the personal involvement limitation expressly does not apply. *SOF at ¶¶ 5, 6, 11 & 14*. And importantly, again, Mattioli was not just acting on behalf of himself as a vigilante. Rather, he arrested Acevedo to also protect Peters. *SOF at ¶ 7*.

Only one reasonable conclusion can be reached based on the undisputed material facts of this case – that when Mattioli acted under color of law, he did so within the scope of his employment. As such, Plaintiff respectfully requests that the Court decide as a matter of law that when Mattioli used force against Acevedo he did so within the scope of his employment.

**WHEREFORE,** it is respectfully requested that the Court grant Plaintiff's Motion for Partial Summary Judgment.

**Respectfully Submitted,**

By: /s/ B'Ivory LaMarr          Date: September 16, 2025
    **B'IVORY LAMARR, ESQUIRE**
    Wisconsin Bar No. 1122469
    blamarr@lamarrfirm.com
    THE LAMARR FIRM
    5718 Westheimer Road, Suite 1000, Houston, TX 77057
    800.679.4600, Ext. 700

By: /s/ Devon M. Jacob          Date: September 16, 2025
    **DEVON M. JACOB, ESQUIRE**
    Pennsylvania Bar No. 89182
    North Carolina Bar No. 63663
    djacob@jacoblitigation.com
    JACOB LITIGATION, INC.
    P.O. Box 837, Mechanicsburg, Pa. 17055-0837
    717.796.7733

    **KIRK M. CLAUNCH, ESQUIRE**
    Texas Bar No. 1039975
    claunchlaw3@earthlink.net
    THE CLAUNCH LAW FIRM
    301 W. Central Avenue, Forth Worth, TX 76164
    817.335.4003

**BENJAMIN L. CRUMP, ESQUIRE**
Washington, D.C. Bar No. 1552623
court@bencrump.com
**PRECIOUS CHAVEZ, ESQUIRE**
precious@bencrump.com
BEN CRUMP LAW, PLLC
122 S. Calhoun Street, Tallahassee, FL 32301
800.959.1444

*Counsel for Plaintiff*