JOSE ACEVEDO, individually, and as Special
Administrator of the Estate of JOEL ACEVEDO,

               Plaintiffs,

v.                                      Case No. 23-C-00489

MICHAEL A. MATTIOLI and
CITY OF MILWAUKEE,

               Defendants.

## CITY OF MILWAUKEE'S REPLY TO
## PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT

## PROCEDURAL HISTORY

On April 14, 2023, Plaintiff Jose Acevedo (Plaintiff) filed this lawsuit individually and as special administrator of the Estate of Joel Acevedo. (ECF No. 1). Plaintiff's initial complaint states the following causes of action: (1) the City of Milwaukee (City) "adopted *de facto* policies or customs of utilizing excessive force and/or violating a person's … rights[,]" *see* ECF No. 1, ¶ 68; (2) the City was deliberately indifferent to the need for an explicit policy forbidding chokeholds and/or neck restraints, *see id.*, ¶¶ 73-75; (3) Defendant Michael Mattioli (Mattioli) used objectively unreasonable (i.e., excessive) force upon Acevedo, *see id.*, ¶¶ 82-85; (4) Defendant Robert Roach (Roach) failed to intervene, and (5) demanded punitive damages. (*Id.*, ¶ 92).

On May 30, 2023, Mattioli filed a motion to stay proceedings pending the resolution of his criminal trial (ECF Nos. 10-12). The Court granted Mattioli's request to stay on June 14, 2023, ordering that responses to Plaintiff's complaint were to be filed by December 1, 2023. (ECF No.

1

16). Immediately thereafter, on December 21, 2023, Plaintiff filed an amended complaint (i.e., the operative complaint). (ECF Nos. 23).

Plaintiff's amended complaint includes federal claims under 42 U.S.C. § 1983 for excessive force (against Mattioli), failure to intervene (against Roach), and duplicative *Monell*[1] claims against the City and former chief-of-police Alfonso Morales (Morales) in his official capacity, as well as state-law claims all arising from an incident that occurred in the early morning hours inside Mattioli's own home. (ECF No. 23). On January 11, 2024, the City filed its answer and crossclaim for declaratory judgment that Mattioli did not act within his scope of employment or under color of law during the incident. (ECF No. 28, ¶ 12). More than eighteen months later, following multiple extensions to extend the time for discovery, Plaintiff filed a stipulation dismissing Defendants Roach and Morales with prejudice. (ECF No. 50).

On August 1, 2025, Plaintiff filed a motion for partial summary judgment asking the Court to that Mattioli acted under color of state law and within his scope of employment on April 19, 2020. *See generally* Br. in Supp. of Pl.'s Mot. for Partial Summ. J. (ECF No. 57), at 5, 8-9. The City also filed a motion requesting judgment in its favor on its crossclaim and upon Plaintiff's federal claims against Mattioli and the City because no reasonable jury could plausibly find that Mattioli acted under color of law during the incident. (ECF No. 59). On September 10, 2025, Plaintiff asserted a new cause of action, after more than two years of litigation, that Mattioli deliberately disregarded Acevedo's medical needs during the incident. *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 13.

The City submits the following brief in reply pursuant to Civil L. R. 56(b)(3)(A) and incorporates by reference its prior motion, *see* ECF No. 59, and all materials filed in support

---

[1] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

thereof, including without limitation its brief in support, *see* ECF No. 64, as well as the arguments and cases cited in its briefs in opposition to Plaintiff's motion for partial summary judgment, *see* ECF No. 75, Mattioli's motion for summary judgment, *see* ECF No. 83, and all other materials filed in support of its motion and/or in opposition to Plaintiff's motion and Mattioli's motion.

## ARGUMENT

**I.    The Court Should Reject Plaintiff's Attempt to Introduce New Claims Through His Brief in Opposition.**

Plaintiff has been jointly represented by several attorneys since this suit was filed. (ECF No. 1). Plaintiff's initial complaint was filed on April 14, 2023. (*Id*.). Plaintiff did not raise a claim for failure to provide medical care in his initial complaint. (*Id*.). After this case was stayed from June 2023 until December 2023, Plaintiff filed an amended complaint. (ECF No. 23). Plaintiff's amended complaint also does not raise a claim for failure to provide medical care. (*Id*.). Plaintiff's brief in opposition to the City's motion for summary judgment was the first time he asserted a new cause of action under § 1983 for failure to provide medical care. *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 13. This Court should reject Plaintiff's eleventh hour attempt to "smuggle [a new claim] into the case through [his] summary judgment briefing." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023).

**II.   The Court Should Grant Summary Judgment in Favor of the Defendants Because Plaintiff Cannot Establish Action Under Color of Law**

The City's response to Plaintiff's proposed findings, *see* ECF No. 72, as well as its brief in opposition to Plaintiff's motion for partial summary judgment identified several instances in which the cited materials or the record as a whole do not support—or blatantly contradict—Plaintiff's preferred narrative. *See* City of Milwaukee's Br. in Opp'n. to Pl.'s Mot. for Partial Summ. J. (ECF No. 75), at 6-12. Throughout this litigation, Plaintiff has asserted that Mattioli "called 911 and stated, "'I am a police officer and I need help.'" *See* ECF No. 23, ¶ 11; ECF No. 56, ¶ 2. Plaintiff's

3

opening brief argued, "[i]mportantly, Mattioli did not call the 911 Center and simply request help as a private citizen would do. Rather, Mattioli invoked his police authority when he called the 911 Center and stated 'I am a police officer and I need help.'" *See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J. (ECF No. 57), at 4.

Now, finally, Plaintiff acknowledges that Mattioli stated "I am an off-duty police officer" on the 911 call. *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 5. *See also* Def. City of Milwaukee's Proposed Findings of Fact (ECF No. 60), ¶ 49; Def. City of Milwaukee's Resp. to Pl.'s Proposed Findings of Fact (ECF No. 74), ¶ 2. To Plaintiff, it is a distinction without a difference. From Plaintiff's perspective *any* acknowledgment that one is employed as a police officer is an invocation of police authority. How does this expansive view square with binding precedent holding that 42 U.S.C. § 1983 "does not cover disputes between private citizens, even if one happens to be an officer[?]" *Barnes v. City of Centralia, Illinois,* 943 F.3d 826, 831 (7th Cir. 2019) (citation omitted). Plaintiff does not say.

Instead, Plaintiff baldly asserts "Mattioli did not call … and simply request help as a private citizen would do." *See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J. (ECF No. 57), at 4. Mattioli said, "I need help." *See generally* Pl.'s Resp. to Def. City of Milwaukee's Proposed Findings of Fact and Pl.'s Addt'l Proposed Findings of Fact (ECF No. 72), ¶ 49. No reasonable person would believe a private citizen would not say, "I need help." Mattioli did not tell the dispatcher, "I have a suspect detained," or "send back up." He did not report "I need transport for an arrest." In short, Plaintiff proposes that Mattioli's status as a police officer establishes he acted under color of law. *Contra Gibson v. Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990).

Nor does Plaintiff acknowledge that Milwaukee Police Department (MPD) policy directs its officers to immediately identify themselves as an off-duty officer, or that it cautions them that

officers who have failed to so identify themselves have been injured. *See* Def. City of Milwaukee's Reply to Pl.'s Addt'l Proposed Findings of Fact, ¶ 73. To Plaintiff, the words "police officer" have legal significance but the modifier, "off duty" does not. But, no reasonable person would believe that. *Seshadi v. Kasraian*, 130 F.3d 798, 801-802 (7th Cir. 1997). Every reasonable person knows that context influences the meaning and significance of words. Mattioli's report that he was off duty is not just a statement—its evidence of his state of mind *at the time*. That Mattioli told the dispatcher that he was off duty means that he contemplated his status, was aware that he *could* put himself on duty, and concluded that he had not done so. To accept Plaintiff's view, one must ignore neutral explanation, set aside common experience with language, and reject the best evidence of Mattioli's subjective intent.

Plaintiff entirely misses the point in *Pickrel v. City of Springfield*, 45 F.3d 1115 (7th Cir. 1995). "Being off duty did not preclude [an officer] from acting under color of state law," means only whether or not one is on-the-clock is not dispositive. *Id*. at 1118. Put another way, *Pickrel* recognizes that Mattioli had authority to act under color of state law. So far, so good; but Plaintiff fails to grapple with *Lindke v. Freed,* 601 U.S. 187 (2024). *Lindke* held that not only must an official possess state authority, "he must also purport to use it." *Id*. at 198. To invoke state authority is to purport to use it. To purport to exercise authority, first one must form an intent to do so. Viewed this way, no reasonable person would believe Mattioli's statement during the 911 call invoked police authority.[2]

Similarly, no reasonable person could believe that Mattioli's shirt is an invocation of authority. Plaintiff does not even try to explain how the same shirt that did not convey official

---

[2] For the same reason, Plaintiff's assertion that "arrest" as defined by department policy does not require a formal declaration is unhelpful. Once again, this establishes only that Mattioli *could* have personally arrested Acevedo (i.e., that he possessed state authority). Plaintiff's argument fails because there is no evidence—beyond Plaintiff's speculation, conjecture, and/or wishful thinking—that Mattioli intended to (i.e., purported to) do so.

authority while the group drank alcohol and socialized the night before transformed the next morning. *See* Br. in Supp. of Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 64), at 14. Plaintiff's assertion is not only inconsistent with Mattioli's contemporaneous statements—its implausible on its face. *McGlenn v. Madison Metro. Sch. Dist.*, 738 F. Supp. 3d 1071, 1090 (E.D. Wis. 2024). Indeed, the deposition transcript itself shows this to be nothing more than a cynical ploy; Plaintiff cites the following exchange as support for his proposed finding:

```
                                              Page 69
Q    So to the extent that Joel suddenly forgot that
     you were a police officer, looking at you he
     would have seen you wearing something that
     indicates you are a police officer, too;
     correct?
A    That's possible, yes.
```

*See* Mattioli Dep. (ECF No. 63-2), 69:1-6. Plaintiff elides the very next question, in which Mattioli acknowledges that everyone at his house knew that he worked for MPD. *Id.*, 7-10. But that is entirely the point: unlike in *Pickrel*, where the defendant's uniform plausibly suggested something about his status to onlookers, here it adds nothing. Mattioli's guests, including Acevedo, already knew he worked for MPD (i.e., possessed state authority). Mattioli's guests, including Acevedo, knew he had worn the same shirt the prior evening while they drank and socialized. *See* Def. City of Milwaukee's Proposed Findings of Fact (ECF No. 60), ¶¶ 17, 19, 24-25. There is no evidence and no reasonable person would believe Mattioli acted in an official capacity on Saturday night. By the same token, no reasonable person could believe Mattioli's shirt invoked official authority at 7:30 a.m. the next morning. Plaintiff's argument to the contrary is entirely specious.

Once again, Plaintiff ignores evidence that does not fit his narrative. At deposition, Plaintiff's counsel asked the City's Rule 30(b)(6) witness, "What if I'm wearing a shirt that identifies me as a police officer[?]" *See* Def. City of Milwaukee's Reply to Pl.'s Addt'l Proposed

6

Findings of Fact, ¶ 61 (citing Lewis Dep. (ECF No. 73-7), 129:4-14). The witness explained that the department sells T-shirts, that friends and family wear them, and that the witness himself has a jacket that says "Milwaukee Police" although he is a civilian employee. *Id*. In short, the inference Plaintiff suggests flies in the face of reality. The city witness's testimony is consistent with every reasonable person's lived experience: people wear Packers and Brewers jerseys despite not being on the team, and wear University of Wisconsin and Marquette T-shirts although they are not alums. Plaintiff asserts that a reasonable jury could find Mattioli purported to act with official authority because his T-shirt bore a department insignia; under the circumstances, no reasonable person could plausibly believe so. *Seshadi*, 130 F.3d at 801-802.

Plaintiff additionally mischaracterizes Mattioli's testimony and conflates his after-the-fact statements with his contemporaneous ones. It is undisputed that Mattioli told Acevedo, "if you don't [leave], I'm going to call the police." *See* Pl.'s Resp. to Def. City of Milwaukee's Proposed Findings of Fact and Pl.'s Addt'l Proposed Findings of Fact (ECF No. 72), ¶ 38. Furthermore, it is undisputed that there is no direct evidence that Mattioli intended to place Acevedo under arrest. *Id*., ¶ 56. Plaintiff argues that Mattioli was "evaluating Acevedo's conduct in terms of 'crimes'" while restraining Acevedo. *See* Pl.'s Resp. to Def. City of Milwaukee's Proposed Findings of Fact and Pl.'s Addt'l Proposed Findings of Fact (ECF No. 72), ¶ 4. But no reasonable person could accept that Mattioli contemplated personally arresting Acevedo at the time, when he consistently and repeatedly has denied that was the case and no contemporaneous evidence supports the opposite conclusion. *Id*. Plaintiff's reliance upon Mattioli's trial testimony is similarly undercut by the record as a whole. *Id*., ¶¶ 4-8. *See also* City of Milwaukee's Br. in Opp'n. to Pl.'s Mot. for Partial Summ. J. (ECF No. 75), at 8-11.

Unfortunately, the same pattern repeats throughout Plaintiff's opposition brief. Plaintiff implies that laying on top of Acevedo was an MPD technique because Mattioli testified he had done it before on-the-job. *See, e.g.,* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 2 (Mattioli "used law-enforcement restraint techniques he had learned and employed in his capacity as an officer[.]"). On its face, the statement "I have done it before," tells the listener nothing about the conduct's origin. *See* Def. City of Milwaukee's Reply to Pl.'s Addt'l Proposed Findings of Fact, ¶¶ 12-15. Adding that "I was on-duty" when I did it before might show correlation—but not causation. *Id.*

Moreover, there is another glaring problem with Plaintiff's use of this testimony. When counsel asked Mattioli where he learned that technique, Mattioli stated, "all I did was use my bodyweight to keep him on the ground." *See* Mattioli Dep. (ECF Nos. 63-2 and 73-1), 92:16-22. However, in Plaintiff's opposition brief, describes Mattioli's "tactic" as "straddling a prone suspect and pinning him with [his] bodyweight, including across the neck and upper torso." *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 6. Even if Plaintiff disputes that *all* Mattioli did was use his bodyweight to keep Acevedo on the ground it still is not the case that Mattioli ever adopted Plaintiff's characterization of events. As such, Mattioli "admitted" (at most) what he said: that he had used his bodyweight before to keep suspects on the ground. *See* Def. City of Milwaukee's Reply to Pl.'s Addt'l Proposed Findings of Fact, ¶ 12. Regardless, there is no evidence at all that Mattioli ever used his bodyweight in the precise manner Plaintiff suggests in the past. *Id.*, ¶¶ 12-15.

In addition, Plaintiff's legal analysis is conclusory. He asserts without citation that "directing official police action is quintessential conduct under color of law." *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 6. *See also id.*, at 8 ("Here,

8

the case centers on quintessential police functions."). Mattioli himself pointed out the error in this logic: "[m]e acting in self-defense doesn't necessarily mean I was acting as a police officer." *See* Def. City of Milwaukee's Resp. to Pl.'s Proposed Findings of Fact (ECF No. 74), ¶ 7. Furthermore, Defendants are not aware of any cases defining "quintessential" police functions—however Defendants *are aware* that the Seventh Circuit has explicitly rejected that "mere overlap between [the defendant's] routine job responsibilities" establishes action under color of law. *DiDonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022). In effect, Plaintiff proposes that this Court ignore binding precedent requiring proof that a defendant's alleged invocation of state authority "facilitated or enabled the alleged misconduct[,]" because "officials or employees who act without the cloth of state authority do not subject themselves to § 1983 suits." *Id*. *See also* City of Milwaukee's Br. in Opp'n. to Pl.'s Mot. for Partial Summ. J. (ECF No. 75), at 16-20; City of Milwaukee's Br. in Resp. to Mattioli's Mot. for Summ. J. (ECF No. 83), at 3-4. The Court should decline to do so. *Id*.

Plaintiff's reliance upon Roach's conduct is likewise misplaced. In the first place, Plaintiff's claims against Roach were dismissed. (ECF No. 50). In the second, Plaintiff makes no effort to distinguish this case from others involving off duty officer-defendants who "orchestrated" other plaintiffs' arrest under circumstances found not to be not under color of law. *See, e.g., Barna v. City of Perth Amboy,* 42 F.3d 809*,* 818-20 (3rd Cir. 1994) (finding insufficient evidence off-duty officers acted under color of law although they caused plaintiff to be arrested); *Zienciuk v. City of Chicago*, No. 01 C 3769, 2002 U.S. Dist. LEXIS 16036, at *7-8 (N.D. Ill. Aug. 28, 2002) (finding no action under color of law although off-duty officer "asked one of the [uniformed, on-duty] officers to arrest [plaintiff].").

Moreover, Plaintiff does not accurately describe the cases he *does* cite in support of his position. For example, Plaintiff glosses *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) as involving "an off-duty bar altercation with no invocation of police power." *See* Pl.'s Resp. in Opp'n to Def. City of Milwaukee's Mot. for Summ. J. (ECF No. 71), at 8. To the contrary, *Spiegel* involved a § 1983 action brought by a condominium owner against his neighbor (McClintic) and the Village of Wilmette, alleging that McClintic and the Village conspired to violate his constitutional rights. *Spiegel*, 916 F.3d at 614. The court of appeals noted "the under color-of-state-law element means that § 1983 does not permit suits based on private conduct, "no matter how discriminatory or wrongful." *Id.* (citations omitted). The Court held the plaintiff failed to state a civil rights claim against his neighbor because the "mere act of filing false police reports is not actionable under § 1983" and that the plaintiff did not allege that the officers were aware that the reports were false or that they had previously agreed with McClintic to investigate such false reports, and that it was unclear whether McClintic's reports actually contained falsehoods. *See Spiegel*, 916 F.3d at 617. *Spiegel* does not concern an altercation in a bar, nor does it support Plaintiff's contention that causing another's arrest is necessarily action under color of law. Indeed, *Spiegel* supports the position that a private citizen who seeks law enforcement assistance does not, thereby, act under color of state law.

Finally, Plaintiff completely misunderstands Ms. Aldrete's testimony about the Fire & Police Commission investigation. Plaintiff places great weight upon the charges issued by the FPC. *See, e.g.* (ECF No. 71), at 12-13, 19. In so doing, Plaintiff cites repeatedly to a draft charging document (ECF Nos. 73-2 and 80-2), prominently marked as "Confidential," which was presented to the Commissioners for consideration. *See* City's Response to Additional Proposed Findings of Fact, ¶¶ 63-72 (citing Muche Decl., ¶¶ 3-9, Ex. 3). Neither proposed charges, nor the underlying

rationale have any legal significance unless adopted by the FPC. In this instance, the FPC issued formal charges in the matter of civilian complaint against Michael Mattioli on July 10, 2020. *See* City's Response to Additional Proposed Findings of Fact, ¶¶ 63-72 (citing Muche Decl., ¶¶ 3-9, Ex. 3). Pertinent to the legal issues presented at summary judgment, the FPC charged Mattioli with violating Core Value 3.00—Integrity. *Id*. The charging document further reflects that Core Value 3.00 applies whether members are "on or off-duty." *Id*. As such, the FPC charges are not relevant to the legal issues raised by the parties cross-motions at summary judgment (i.e., whether Mattioli acted under color of law and/or within his scope of employment).

Despite valiant efforts by counsel to selectively edit and repackage the record evidence, there are no genuine issues of material fact which preclude summary judgment. Plaintiff argues that this case should proceed to trial so that a jury can decide whether Mattioli's conduct looks sufficiently like police activity to impose liability. As discussed in greater detail in the City's brief in opposition to Plaintiff's motion, the Court should deny Plaintiff's motion and grant summary judgment for the Defendants on Plaintiff's federal § 1983 claims because no rational jury could find that Mattioli acted under color of law. *See* City of Milwaukee's Br. in Opp'n. to Pl.'s Mot. for Partial Summ. J. (ECF No. 75), at 13-20.

### III. The Court Should Grant Summary Judgment for the City on its Claim for Declaratory Judgment.

Scope of employment is distinct from, and narrower than, color of law. *Martin v. Milwaukee County*, 904 F.3d 544, 552 (7th Cir. 2018). The Court may find Mattioli was outside the scope of his employment <u>even if</u> it finds that Mattioli acted under color of law because scope of employment is narrower than color of law, *Id*. The Court should grant summary judgment for the City on its crossclaim for declaratory judgment finding that Mattioli did not act within the scope of his employment, and is not entitled to indemnification pursuant to Wis. Stat. § 895.46 for

11

any judgment against him arising from this incident because he was off duty and outside the authorized time and space limits of his employment as a police officer, he acted in self-defense, he did not subjectively intend to serve his employer, and the record contains no evidence Mattioli considered it his official duty to respond as a police officer. *See* City of Milwaukee's Br. in Opp'n. to Pl.'s Mot. for Partial Summ. J. (ECF No. 75), at 20-26.

### IV.     The Court Should Summarily Dismiss Plaintiff's State-Law Claims.

Wisconsin's Legislature has created a specific procedure for bringing and maintaining causes of action against municipalities and their employees under state law. See Wis. Stat. § 893.80(1d). "[N]o action may be brought or maintained" unless the plaintiff first serves "written notice of the circumstances of the claim[,]" upon both the municipality and its employee. Wis. Stat. § 893.80(1d)(a). Section 893.80(1d)(b) further requires the plaintiff to present "an itemized statement of the relief sought" before plaintiffs may bring or maintain suit. Failure to comply with either subpart (a) or subpart (b) of Section 893.80(1d) is fatal as a matter of state law. Stabenow v. City of Eau Claire, 546 F.Supp.3d 787, 803 (W.D. Wis. 2021). Plaintiff admits he did not comply with this procedure. *See* Pl.'s Resp. to Def. Mattioli's Proposed Findings of Fact and Pl.'s Addt'l Proposed Findings of Fact (ECF No. 79), ¶ 63. The record as a whole similarly demonstrates that Plaintiff did not serve notice upon the City. (ECF No. 62). As such, Plaintiff's claims under state law may not be "brought or maintained" and therefore must be dismissed.

### CONCLUSION

The Court should grant summary judgment for the Defendants on Plaintiff's federal claims because Plaintiff cannot meet his burden to plausibly establish that Mattioli acted under color of law. The Court should also grant summary judgment for the City on its crossclaim for declaratory judgment because no reasonable jury could find that Mattioli acted within his scope of employment. The Court need not reach the merits on Plaintiff's state law claims because these

claims are not viable under Wisconsin law; the Court should summarily dismiss Plaintiff's state-law claims.

Dated and signed at Milwaukee, Wisconsin this 16th day of September, 2025.

EVAN GOYKE
City Attorney

/s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629

*Attorneys for City of Milwaukee*

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov

1032-2023-681/******

13